Connie Elizabeth **WHITE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–77–17.

Court of Criminal Appeals of Oklahoma.

Dec. 2, 1977.

David N. O'Brien, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Connie Elizabeth White, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, of the offense of Larceny of Merchandise from a Retailer, in violation of 21 O.S.1971, § 1731(D). After a nonjury trial before the Honorable Carmon C. Harris, the defendant was sentenced to three (3) years' imprisonment. Defendant then announced her intention to appeal, and she was released on appellate bond. The time period for filing the appeal expired on January 9, 1977, and the following day a warrant for the defendant's arrest was issued, because no appeal had been filed. On January 11, 1977, the defendant was granted leave to file an appeal out of time by order of the Presiding Judge of this Court.

The State's first witness was Paul Adams, who on November 25, 1975, was employed as a store detective at the John A. Brown Department Store located in Penn Square Mall in Oklahoma City. While on duty that day, he received a security page directing him to report to the Men's Sportswear Department. When he arrived there, he had a conversation with one of the salesmen. The witness then testified that as a result of this conversation he observed and then followed the defendant around the store. After walking through the store, the defendant went out to the parking lot and got into her car. Mr. Adams testified that he watched the defendant from inside the glass doors of the entrance to the mall. He saw her reach into the back seat of the vehicle, bring out a white pillow case, place it on the front seat, and then return it to the floorboard. The defendant then exited the car and returned to the mall through a different entrance. Mr. Adams noticed that defendant's purse appeared flat. After the defendant returned to the mall, Mr. Adams went to the defendant's vehicle, reached inside and removed the white pillow case. Upon looking inside, he discover-

ed a man's blue leisure suit with a John A. Brown label, perforated in the middle and both sides intact. The witness testified that when merchandise is sold half of the tag is torn off and kept by the store. The price tag on the garment showed a price of $110.00. At this point Mr. Adams returned to the store entrance and told what he had seen to John Lundell, the store's security director. Mr. Lundell suggested that they wait until the defendant return to her car. Both men got into Mr. Lundell's car, which was parked on a raised part of the parking lot, from which they could observe defendant's car. After a 20 minute wait, the defendant returned to her vehicle, and the witness noticed that her purse was "bulging."

Mr. Lundell and the witness then drove up behind the defendant's car and asked her to step out. The defendant complied. She was asked to show the contents of her purse to Mr. Lundell, and the defendant handed him her purse. Inside the purse were a ladies' beige pant suit and black dress with John A. Brown labels still attached, indicating that the pant suit and dress had not been paid for. The combined price of these items was $320.00. The white pillow case was then removed from the car, opened, and the blue leisure suit removed. The defendant was escorted to the security office inside the store where she was advised of her rights. The witness then stated that the defendant was held at the security office until the police arrived. Later, the defendant was taken to the city jail.

On cross-examination, the witness admitted that he did not see the defendant actually remove the items in question from the store.

John Lundell was the second witness for the State. On November 25, 1975, he was employed as the security director for the John A. Brown Company. On that day he was working at the Penn Square Mall store when at 12:15 p. m. he had a conversation with Paul Adams. As a result of that conversation, he and Adams went to Lundell's car, which was parked near the defendant's car, and waited until she emerged from the store. They then followed her to her car. The balance of the witness' testimony essentially corroborated that of Paul Adams as to the confrontation and arrest of the defendant. Mr. Lundell further stated that only he was authorized to allow merchandise to be taken from the store by a customer without payment, and that he had never given the defendant such permission. At the conclusion of his testimony on direct examination, the leisure suit, ladies' pant suit, and the dress were all admitted into evidence.

The State called as its third witness Vernon DeMoss, who on November 26, 1975, was a detective with the Oklahoma City Police Department, as he had been for over six years. On that date, the witness interviewed the defendant while she was incarcerated in the Oklahoma City jail. After advising the defendant of her rights, Detective DeMoss asked her if she had in fact taken the items from the store, and according to Detective DeMoss, the defendant admitted having taken the merchandise.

Merlen Thomas, the last witness called by the State, testified that on December 9, 1975, while he was employed as a probation officer with the Department of Corrections, he had occasion to speak with the defendant. After being informed of her rights, she admitted having taken all of the previously described articles.

At the conclusion of Mr. Thomas' testimony the State rested.

Defense counsel's demurrer to the evidence was overruled by the court, and the defense rested without presenting any evidence.

After closing arguments, the court found the defendant guilty, basing its findings on the consent given to Mr. Lundell to search the defendant's purse as well as the statements made to the two last witnesses. The court disregarded the first search of the car conducted by Paul Adams, because the court thought Adams had lacked probable cause to look inside the defendant's vehicle.

For her first assignment of error, the defendant alleges that the search of her

automobile was unlawful and that, therefore, evidence resulting from it should not have been admitted. The defendant briefs the proposition that the lower court should be affirmed in its decision not to consider evidence from the original search. However, as the lower court determined that the evidence gained by the search of defendant's car was inadmissible, and should not be considered, defendant cannot have been prejudiced by the decision, and this Court need not discuss the issue.

Defendant's second assignment of error is that her arrest was illegal and improper and that, therefore, the evidence found on defendant's person should have been suppressed. Title 22 O.S.1971, § 1343, provides that:

"Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner for a reasonable length of time for all or any of the following purposes:

"(a) Conducting an investigation, including reasonable interrogation of the detained person, as to whether there has been a wrongful taking of such merchandise or money;

"(b) Informing the police or other law enforcement officials of the facts relevant to such detention;

"(c) Performing a reasonable search of the detained person and his belongings when it appears that the merchandise or money may otherwise be lost; and

"(d) Recovering the merchandise or money believed to have been taken wrongfully. Any such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee criminally or civilly liable to the person so detained."

■ In the instant case, the security police were the agents or employees of the merchant, John A. Brown Company. With regard to whether the security police had reasonable grounds or probable cause to

think that defendant had committed a crime, it is necessary to look at the evidence which was properly admitted showing probable cause that a crime had been committed and that defendant had committed it. First, the security guard Paul Adams had received a security page to go to the men's sportswear department. There, he was told something by the clerk which made him put the defendant under suspicion and caused him to follow her up the escalator, back down, out to the parking lot and to her car. When the defendant got to her car, Adams saw her reach into the car and pull out a white bag. After she left the car and headed back towards the shopping center, Adams looked into the back of the car through the open window and in plain view saw a white pillow case on the floor. Approximately 20 minutes later, the defendant, who had left her car with a flat purse, returned to the car with her purse bulging.

■ The trial court refused to allow Adams to testify as to what he was told by the clerk which caused him to place the defendant under suspicion, on the grounds that those statements were hearsay evidence. A hearsay statement is one which was made out of court and which is offered to prove the truth of the matter asserted in the statement. A statement is not hearsay where it is offered for some other purpose. See, 31A C.J.S. Evidence § 193. As this Court stated in *Laughlin v. City of Tulsa*, 492 P.2d 1131 (1972), a statement is hearsay when the competency and credibility of some person other than the witness testifying determines its probative value. The statements the State tried to get admitted were for the purpose of establishing reasonable grounds for detaining the defendant, and were not sought to be admitted for the purpose of showing that defendant had committed the acts complained of. Although it would have been preferable for the State to have had the store clerk testify as to what he or she had observed with regard to the defendant, as this Court stated in *Sang v. State*, 461 P.2d 976, 978 (1969):

"[I]n order to show the validity of an arrest, it is competent to admit testimony of an officer that he had received a report of the commission of a felony and the description of the automobile and its occupants allegedly involved in the same. We wish to reiterate, however, that details of the alleged felony, or felonies, are inadmissible and the trial court properly excluded evidence relating to said details."

Nevertheless, this Court thinks that even with the limited testimony available regarding what preceded surveillance of the defendant, it has before it sufficient evidence to determine that the security guards had probable cause to think that the defendant had committed a crime, and that therefore their actions with regard to detaining and searching her were proper under the provisions of 22 O.S.1971, § 1343.

 Defendant's third assignment of error is that her confession was improperly admitted. Defendant's sole basis for arguing that her confession was improperly admitted is that it was obtained as the result of an illegal search, an illegal arrest, and a confrontation with evidence obtained as a result of those illegal searches and arrest. As discussed before, the arrest of the defendant was legal, as was the search of her bag, which yielded two complete pant suits with hangers and two bottles of cologne, all of which were unpaid for. Therefore, defendant's confession is not tainted.

▮ The defendant's last assignment of error is that she was denied her constitutional right to a speedy trial. The landmark case on this issue is *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There, the United States Supreme Court adopted a balancing test by which courts should consider arguments concerning lack of a speedy trial. Interests of the defendant which the right to a speedy trial protect are:

i. To prevent oppressive pretrial incarceration;

ii. To minimize anxiety and concern of the accused prior to trial, and

iii. To limit the possibility the defense will be impaired.

▮ The Supreme Court said that the last interest mentioned above is the most important, because if the defendant cannot present a proper defense injustice will result. In the instant case, the defendant was not incarcerated prior to trial. Although it is true the State was granted several continuances over the defendant's objections, there is no assertion that the defense was hampered or prejudiced in any way. Indeed, considering the facts of this case, it is difficult to see how such a claim could be made. Therefore, we are of the opinion that the delay of three months between the preliminary hearing and the trial did not violate the defendant's right to a speedy trial.

Finding no error which requires reversal or modification, the judgment and sentence is AFFIRMED.

BUSSEY, P. J., concurs in results.

CORNISH, J., concurs.