# JOHN HOPKINS v. STATE.

No. A-227.    Opinion Filed March 31, 1910.

Rehearing Denied November 22, 1910.

(108 Pac. 420.)

1. CONSTITUTIONAL LAW—"Ex Post Facto Laws"—What Constitutes. Within the meaning of the Constitution, any law is ex post facto which is enacted after the offense was committed, and which, in relation to it or its consequences, alters the situation of the accused to his disadvantage.

2. INDICTMENT AND INFORMATION—Return — Concurrence of Grand Jurors. An indictment charging a felony, where the offense was committed prior to statehood, must be returned on concurrence of 12 grand jurors.

3. APPEAL—Presumptions as to Regularity of Indictment. When an indictment is duly returned as a true bill, properly indorsed and with the signature of the foreman, the presumption is that it was regularly found, on legal and sufficient evidence, with due deliberation, and by the concurrence of the requisite number of jurors.

4. INSTRUCTIONS—Evidence to Sustain. A defendant cannot be heard to complain of the refusal of the court to give instructions on insanity, when there is no evidence offered even tending to prove insanity on part of the defendant.

5. HOMICIDE—Instructions—Manslaughter. It is the duty of the trial court to instruct on the law of manslaughter if there is any evidence that the alleged crime might have been done under circumstances that would reduce it from murder to manslaughter, but it is no error to refuse such instructions if there is no such evidence offered.

6. APPEAL—Specification of Error. A specification of error in the following language: "The court erred in matters of law during the trial of this case, which ruling of the court was excepted to by the defendant and exception allowed," is too general; and when the counsel for the defendant does not point out the errors complained of, such assignment will not be considered by this court.

7. GRAND JURY — Drawing—Validity. In this case the grand jury was drawn from a list of jurors delivered to the clerk of the court by the jury commissioners, but indorsed, "For the

County Court"; there being no contention that the jurors were not in fact qualified to serve as grand jurors. **Held,** this was a substantial compliance with the act providing for the selection of grand jurors, and sufficient to prevent the setting aside of the indictment on motion to quash.

(Syllabus by the Court.)

*Error from District Court, Comanche County; W. M. Bowles, Special Judge.*

John Hopkins was convicted of murder and brings error. Affirmed.

*W. C. Henderson,* for plaintiff in error.

*Charles West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for defendant in error. —On presumption of regularity in grand jury proceedings: *Laurent v. State,* 1 Kan. 313; 22 Cyc. 206, par. 4, and cases cited.

OWEN, JUDGE. The petition in error filed in this case contains 15 specifications or assignments. The first is to the action of the court in overruling the motion to quash the indictment, and in not permitting the defendant to offer proof in support of the motion. The motion is to the effect that the grand jury which returned the indictment in this case was composed of only 12 men, and that in impaneling the grand jury the court in its general instructions advised the grand jury that an indictment in any case might be returned on the concurrence of 9 of the jurors. The homicide in this case was committed prior to statehood. Under the law in force in Oklahoma Territory at that time, a grand jury was composed of 16 men, and an indictment could not be returned without the concurrence of at least 12 of the 16. This court agrees with the contention of counsel that all rights guaranteed to the defendant under the law at the time of the commission of the offense must be allowed him at the time of his trial. Under the Constitution of this state, adopted after the commission of the crime and before the trial, a grand jury is composed of 12 men. This would be *ex post facto* as to this defendant if the charge deprived him of any protection afforded under the law at the time

·of the commission of the offense. Any law is *ex post facto* which is enacted after the offense was committed, and which in relation to it or its consequences alters the situation of the ·accused to his disadvantage. The right guaranteed to the defendant in this instance was the concurrence of 12 jurors before an indictment could be returned against him. If the reduction in the number necessary to compose a grand jury had been below the number necessary to concur in an indictment, then he would have been deprived of a substantial right. At the time of the homicide an indictment could not be returned except on the oaths of 12 jurors, and this right must be preserved to the defendant. If the number of the grand jury had been increased to a greater number than 16, he might have been deprived of a substantial right. In a jury of 16 a failure of 5 to concur would prevent an indictment. If the grand jury be increased, it would require a greater number to prevent an indictment. But when the number composing the jury has been reduced to 12, the failure of one man to concur would prevent an indictment. The motion to quash in this case does not allege that a less number than 12 did in fact concur; the motion is to the effect that the defendant had no knowledge that a less number than 12 did concur. Counsel for the defendant urges that, inasmuch as the court directed the jury that 9 concurring might return indictments, the presumption is that less than 12 did concur. With this contention we cannot agree. We understand the rule to be exactly the converse on this proposition. When an indictment is duly returned as a true bill, properly indorsed, and with the signature of the foreman, the presumption is that it was regularly found on legal evidence and by· the requisite number of jurors. The presumption of regularity is in favor of the indictment. *Canard v. State*, 2 Okla. Cr. 505, 103 Pac. 737. In volume 22 Cyc., page 206, the rule is announced in accordance with our holding here; citing a number of authorities. In the case ˄ of *U. S. v. Wilson*, 28 Fed. Cas No. 16,737, on this proposition, the United States court said:

"Where the record shows that the grand jury found the. bill

of indictment on their oaths, the intendment and legal effect and presumption is that it was found on proper evidence, with due deliberation, and by the concurrence of 12 of their number."

Specifications 2, 3, 4, and 5 refer to the action of the court in overruling defendant's motion for change of venue. The error complained of under these assignments consists in the court having permitted the county attorney to file counter affidavits. Counsel insists that, under section 5427, Wilson's Rev. & Ann. St. 1903, the county attorney is not permitted to file counter affidavits in a crime where the punishment may be death or imprisonment for life. Counsel has overlooked the fact that this statute was amended by the territorial Legislature in 1895. The statute as amended (section 6766, Snyder's Comp. Laws 1909) provides that the county attorney may introduce counter affidavits to show that the persons making affidavits in support of the application are not credible persons, and that the charge is not necessary. There was no error in permitting the county attorney to file counter affidavits. It was authorized by the statute in force at that time. The granting of a motion for change of venue is addressed to the sound discretion of the court, and unless it clearly appears that the discretion was abused, this court will not disturb the verdict for the failure of the trial court to grant the change. There is no contention here that there was an abuse of discretion.

Specifications 6, 7, and 8 are to the action of the trial court in refusing to give instructions on insanity. A careful reading of all the evidence in the record fails to disclose any evidence that even tends to prove insanity on the part of the defendant. Insanity is a question of fact, and since there was no evidence offered to prove it, there was no error on the part of the court in refusing such instructions Counsel for defendant insists that the defendant's actions after he had murdered his wife were such as to authorize the instructions; that evidence is to the effect that for several days after the homicide defendant appeared to be in a stupor, and this fact counsel insists is some evidence of insanity, and on the oral argument it was urged that the brutal circumstan-

ces of the homicide were some evidence of insanity; that a sane
man would not commit a homicide in that manner. The evidence
is to the effect that the defendant and his wife had separated in
Missouri; that he had threatened to kill her unless she returned
and lived with him. He went to her father's house, where she
was residing, and attempted to do her bodily injury, but was
prevented by the interference of the county sheriff. After her
removal to Lawton in this state, he appeared on the scene, and
went to her residence, where he entered the room. She started to
run out. He struck her across the head with a meat cleaver.
The neighbors, hearing her screams, rushed to the scene, where
they found her body prostrate on the floor, with evidence that
carbolic acid had been forced down her throat. The defendant,
bearing evidence that he had taken some of the same drug, was
lying prostrate near her feet. He was immediately taken to the
jail, and three or four days thereafter appeared in a stupor. The
proof was undisputed that the defendant's lips and face were
burned from carbolic acid. In all probabiilty he attempted suicide
after having brutally murdered his wife. The mere fact that
he appeared sullen and was in a stupor after the commission of
the offense would not authorize an inference of insanity. It oc-
curs to us that even a partial realization of the horrible deed he
had committed was amply sufficient to produce a stupor, and we
find no error in the refusal of the court to instruct as to insanity.

The ninth assignment is to failure of the court to instruct
on manslaughter. It is always the duty of the trial court to in-
struct on the law of manslaughter if there is any evidence that the
alleged crime might have been done under circumstances that
would reduce the crime from murder to manslaughter. There is
no effort made in this case to point out any evidence that would
have the slightest tendency to reduce the crime from murder to
manslaughter, and we have been unable to find any such evidence
in the record. The court is only required to instruct as to the law
on the issues of fact raised by the proof. There not having been
any evidence offered tending to reduce the crime to manslaughter,

the court did not err in its failure to instruct as to the law of manslaughter..

Upon specifications 10 and 13 it is alleged that the court erred in matters of law during the trial and in passing judgment, because the verdict was contrary to law and not supported by the evidence. These assignments are too general. Counsel does not undertake to point out the errors complained of, and, if he has been unable to point them out, he certainly cannot expect this court to find them. We think the evidence abundantly sufficient to support the verdict. A different verdict would have been a travesty on justice.

Specifications 12 and 14 complain of the action of the court in overruling the motion for a new trial and the motion in arrest of judgment, and does not raise any questions other than those presented under the other assignments.

Specifications 11 and 15 are to the action of the court in overruling the motion to quash the indictment for the reason that the panel of the grand jury which returned this indictment was drawn from a list of jurors selected for the county court. It appears that the list of jurors selected for the county court was delivered to the clerk of the district court, and the list selected for the district court was delivered to the clerk of the county court.

Section 3985, Snyder's Comp. Laws, 1909, is as follows:

"The board of jury commissioners shall make two separate certified lists, of the names drawn for the said court, showing the election precinct from which each juror was selected; one of said lists for the district court shall be delivered to the clerk of the district court and there retained, and the list for the county court to the judge of the county court of said county, and there retained."

The law requires the jury commissioners to draw the jury for the county court from the same body of electors from which they draw the jury for the district court. A juror in the county court must possess the same qualifications as a juror in the district court. One list is delivered to the clerk of the district court, and one list to the clerk of the county court.

Section 3995 of Snyder's Comp Laws, 1909, is as follows:

"A substantial compliance with the provisions of this Act shall be sufficient to prevent the quashing or setting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial compliance with the provisions of this Act shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen hereunder, unless the irregularity in drawing, and summoning or impaneling the same, resulted in depriving a party litigant of some substantial right; provided, however, that such irregularity must be specifically presented to the court at, or before, the time the jury is sworn to try the cause."

The mere fact that the jury commissioners delivered to the clerk of the district court the list of jurors selected for the county court did not prejudice the defendant in this case. There is no contention here that he was in fact prejudiced or deprived of a substantial right. The appointment of the jury commissioners and the selection of the names to compose the jury for the district and for the county court was in all things regular. This was a substantial compliance with the provisions of the act, and in the very language of the act is sufficient to prevent the quashing or setting aside of the indictment.

After a careful consideration of all the assignments of error and a careful reading of the entire record, we have been unable to find any prejudicial errors committed by the trial court, or any evidence that the defendant had been deprived of a substantial right guaranteed to him under the law.

The judgment of the lower court is therefore affirmed, with directions to the sheriff of Comanche county to carry out the judgment of the district court of that county, and that the defendant, John Hopkins, be executed on the 13th day of May, 1910, according to said judgment as rendered by that court.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.

## ON MOTION FOR REHEARING.

Motion Denied November 22, 1910.

PER CURIAM. The court has given to the motion for a rehearing herein that attention and consideration which the gravity of the charge and the serious and awful consequences of the judgment pronounced below demand. No question has been raised which had not already been presented to this court and considered by it in its original opinion herein; and it is not shown that any express statute or controlling decision was overlooked by the court in deciding the case. We have listened attentively to the full and exhaustive argument of able and zealous counsel for plaintiff in error in support of the present motion, have carefully gone over the opinion heretofore rendered, and have searchingly re-examined the record; and from it all we are unable to deduce the existence of any reasonable ground to believe that the judgment of this court should or could be other than that already rendered. Our re-examination of the record and re-investigation of the matters presented have only confirmed our belief in the correctness of our former ruling. The motion for a rehearing will therefore be denied.

The time originally appointed for plaintiff in error's execution having passed, it is ordered that the judge of the district court of Comanche county execute a warrant in due form of law, cause the same to be attested by the clerk under the seal of the court, and to be delivered to the sheriff of said county, commanding said sheriff to execute plaintiff in error, John Hopkins, between sunrise and sunset on Friday, December 30, 1910, in accordance with law and the judgment of said court heretofore rendered.