Louis J. BROMLEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. C–85–735.

Court of Criminal Appeals of Oklahoma.

June 15, 1988.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Louis J. Bromley, pled guilty to First Degree Robbery Murder (21 O.S.1981, § 701.7(B)) in Grady County District Court, Case No. CRF–85–10, before the Honorable James R. Winchester, Dis-

trict Judge. After a sentencing hearing in which evidence was presented as to aggravating and mitigating circumstances, appellant was sentenced to death. Judgment and sentence was imposed accordingly. Appellant has timely filed a petition for a Writ of Certiorari regarding the validity of his guilty plea. We assume jurisdiction. This Court will also conduct the mandatory sentence review pursuant to 21 O.S.Supp. 1985, § 701.13(A).

On September 9, 1985, appellant appeared before the Honorable James Winchester, District Judge and pled guilty to First Degree Murder. Appellant, relating the factual basis for his plea, explained that he entered the Humpty Dumpty Pharmacy on January 21, 1985, and saw the drugs Dilaudid and Demerol within reach. He pulled a pistol and told the pharmacist, Bob Turney, to hand him the drugs. Turney complied, asking appellant if he also wanted the Percodan tablets. When appellant replied in the affirmative, Turney ran toward him and the two men struggled. They fell through the swinging doors of the pharmacy, and Turney yelled for help to another pharmacist, Steve Beauchamp. As Beauchamp approached, he heard several shots. He joined in the struggle, pulling appellant away from Turney. Both an ambulance and the police were called. Turney died as a result of gunshot wounds, and Beauchamp sustained injuries to his left ear due to a gunshot wound.

### I.

### ISSUES RELATING TO THE GUILTY PLEA

■ As his first proposition, appellant insists his plea of guilty was not knowingly and voluntarily entered. In support of this claim, he alleges there was an insufficient determination of competency, that he was not sufficiently apprised of his rights, and that he misunderstood the law with regard to the plea. *See King v. State,* 553 P.2d 529, 534 (Okla.Crim.App.1976).

*King* requires the trial court to make a determination of a defendant's competency based on an "appropriate interrogation of

the defendant, and his defense counsel ... regarding the defendant's past and present mental state as well as by the defendant's demeanor before the court...." *Id.* at 534. Appellant claims that because there was some indication of past drug abuse, the inquiry made by the trial judge was insufficient.

However, we cannot agree with appellant's contention. The trial judge made a careful inquiry into the mental state of appellant by asking defense counsel specific questions regarding competency and questioning appellant about any medication he was taking. (Tr. 13) Appellant stated that the only medication he was taking was Benadryl for hayfever, but that he had not taken this medication on the day of these proceedings. (Tr. 12) Appellant, in answer to a question asked by the district attorney, also stated he had no prior history of mental illnesses or disorders. (Tr. 20) Nothing in the transcript suggests that appellant was incapable of appreciating the nature of his actions and the consequences of his plea of guilty. After interrogation and due consideration, the trial judge made a specific finding of competency. Furthermore, appellant signed the guilty plea which made direct reference to his competency.

Appellant also complains he was not sufficiently apprised of his right against self-incrimination. Appellant concedes he answered affirmatively when asked if he understood he had the right to remain silent, and that this right would be waived if he pled guilty. However, appellant urges that his plea was involuntary because the judge did not inform him that his waiver of privilege applied to both the guilty plea and the sentencing proceeding. In answer to this contention, we believe it is sufficient in this case to note that defense counsel, in the presence of appellant, expressly requested that the trial judge use appellant's "factual basis" testimony during the plea proceeding as evidence to be considered during the sentencing proceeding. Furthermore, the procedure set forth in *King*, 553 P.2d at 534, was carefully followed by the trial judge. Appellant was informed of his right against self-incrimination. He stated that he and his attorney had thoroughly discussed the matter, and he understood he would be waiving this right by a plea of guilty. (Tr. 23) After review of the entire record, we believe that appellant knowingly waived his right against self-incrimination. *See Ligon v. State*, 712 P.2d 74, 75 (Okla. Crim.App.1986).

Appellant also asserts that he misunderstood the discretionary aspect of withdrawing a plea. He states he was under the impression that "if he did not receive a life sentence from the trial judge he would automatically be able to withdraw his guilty plea within ten days." (Appellant's Brief, at 13)

Our review of the transcript of the guilty plea proceeding fails to disclose any support for appellant's claimed misunderstanding. At no point does the transcript reflect that appellant was told he could automatically withdraw his plea if he did not receive a life sentence.

Throughout the proceedings, appellant was represented by counsel. The record is replete with occasions during which appellant was advised by his counsel. Appellant testified he had fully discussed the nature and consequences of entering a guilty plea with his attorney, and was satisfied with the representation of counsel. (Tr. 22, 23) In answer to the judge's inquiries, appellant stated he understood that his plea of guilty waived his right to jury sentencing and that he could be sentenced to a term of life imprisonment or death by lethal injection. (Tr. 5, 14) Further into the proceedings the judge again explained to appellant that he could be sentenced to death. Appellant acknowledged this, but expressed his desire to enter a guilty plea. Later in the proceeding, he was asked by the judge if he fully understood the questions he had been asked, to which he replied "yes, sir." (Tr. 27) Accordingly, we see no violation of the guidelines set forth by *King*. This assignment of error is without merit. Appellant's petition for writ of certiorari is denied.

## II.

### SENTENCING PHASE

■ Because we find the third and fourth propositions determinative, we will

not address the remaining assignments of error. In his third proposition, appellant urges his due process rights were violated by the introduction of evidence of a criminal charge which was dismissed for lack of a speedy trial. During the sentencing hearing, the State introduced evidence relating to a homicide in which appellant was involved. Appellant objected to this testimony. Apparently, in 1976, appellant was accused of killing another inmate while incarcerated. However, the charge was dismissed with prejudice due to the State's failure to timely prosecute the action. In dismissing the action, the trial judge specifically stated that appellant's right to a speedy trial had been violated. The evidence presented at the sentencing hearing involved the testimony of a correctional officer and two inmates. Appellant argued that these few witnesses were not adequate to show "the full picture", and that other crucial evidence was no longer available.

The State argues that "any relevant evidence in conformance with the rules of evidence" is admissible to prove the "existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Van Woundenberg v. State,* 720 P.2d 328, 337 (Okla.Crim.App.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 447, 93 L.Ed.2d 395 (1987). In furtherance of this position, the State claims admission of the evidence during the sentencing stage is limited only by "constitutional and statutory considerations or by a determination that the probative value of the evidence is outweighed by factors such as 'the danger of unfair prejudice.'" (Appellee's Brief, at 13).

Although we are not convinced as to the relevance of this evidence, we are more troubled by its admissibility with regard to appellant's constitutional rights of due process and a speedy trial. *See State v. Arther,* 290 S.C. 291, 350 S.E.2d 187, 190 (1986). Here, appellant is forced to defend himself against an accusation which a court dismissed over ten years ago for violation of appellant's right to a speedy trial. If this Court condoned such an act, it would fly in the face of a constitutional right which seeks to minimize the possibility of an impaired defense. *See White v. State,* 572 P.2d 569, 573 (Okla.Crim.App.1977). Furthermore, it would violate the mandates of 21 O.S.1981, § 701.10, which states that evidence of aggravation or mitigation shall not be admitted if the "evidence was secured in violation of the Constitutions of the United States or of the State of Oklahoma." The previous dismissal of the charge as a way of enforcing appellant's right to a speedy trial has little substance if the underlying facts of the charge can be used ten years later despite the constitutional violation. *See Fitzpatrick v. State,* 638 P.2d 1002, 1014 (Mont.1981) (court upheld the trial court's refusal to allow evidence of a prior charge which was dismissed for lack of a speedy trial). As stated in *People v. Germany,* 674 P.2d 345, 349 (Colo.1983):

> Given these constitutional strictures on the government, it is axiomatic that a conviction imposed in violation of a basic constitutional right may not be used to support guilt or enhance punishment. This precept finds its source in the principle that unconstitutional convictions, in addition to being of suspect reliability, abridge the very charter from which the government draws its authority to prosecute.

The rationale used by the United States Supreme Court in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), is applicable here. In *Burgett,* the defendant was convicted of "assault with malice aforethought with intent to murder; repetition of offense." The issue addressed was whether a prior conviction which was constitutionally infirm could be the basis for enhanced punishment on a subsequent offense. The Supreme Court answered in the negative, explaining that "since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right," and is inherently prejudicial. *Id.* 88 S.Ct. at 262. Similarly, in *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 1587, 64

L.Ed.2d 169 (1980), Justice Marshall, in his concurring opinion, reasoned that a "prior uncounseled misdemeanor conviction could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction."

When the reasoning from these cases is applied to the facts at bar, it becomes abundantly clear that evidence relating to the dismissed murder charge against appellant could not properly be introduced at the sentencing proceeding to enhance the punishment for the crime to which appellant pled guilty. It cannot be denied that appellant, who suffered sufficient prejudice to require dismissal of the charge over ten years ago, was prejudiced by the admission of this evidence. Neither can it be denied that appellant is forced to "suffer anew from the deprivation" of his constitutional right to a speedy trial. *See Burgett,* 389 U.S. at 115, 88 S.Ct. at 262. The situation presented in the case at bar is even more "inherently prejudicial" than was the situation in *Burgett.* In *Burgett,* the defendant was at least allowed his "day in court" in which he could defend himself, whereas here, appellant is called upon to defend a stale charge which he was not given an opportunity to defend ten (10) years ago due to the State's lack of diligence. It is not a "technical violation", as suggested by the State, which would possibly allow for its introduction at the sentencing hearing. *See Tucker v. Kemp,* 762 F.2d 1480, 1486–87 (11th Cir.1985), *vac'd on other grounds,* 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985) (case involving a dismissal due to lack of corroborative evidence). Rather, this is a violation of constitutional magnitude, which this Court cannot ignore. Appellant was denied due process of law by the imposition of the death sentence because such sentence was based, at least in part, on evidence which should not have been admitted due to its violation of appellant's right to a speedy trial. *See Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977). As such, it was error to admit the evidence of the prior charge against appellant.

Appellant's fourth proposition presents another troublesome situation in which mitigating evidence was omitted from consideration. The mitigating evidence brought into question is a letter purportedly written by appellant's ex-wife and the preliminary hearing transcript. We first address the admissibility of the letter.

■ On the second day of the sentencing hearing, the judge received a letter from Cathy Fisher, the ex-wife of appellant. The judge gave the letter to defense counsel and informed appellant he had not looked at the contents of the letter because it had not yet been introduced into evidence. Defense counsel later tried to introduce the letter, but the State objected on the basis of unreliability. The judge sustained the objection, commenting that Fisher could be called to testify as to the contents of the letter.

Appellant urges that the letter should have been admitted under the rationale of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). These cases stand for the proposition that any relevant, reliable mitigating evidence should be presented to the sentencer due to the qualitative difference in the possible punishment. *See Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964; *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983). It is agreed that the sentencing judge's "possession of the fullest information possible concerning the defendant's life and characteristics" is essential to the selection of an appropriate sentence. *Id.* 438 U.S. at 603, 98 S.Ct. at 2964, quoting *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Furthermore, we cannot agree with the State's position that the letter was inadmissible because it was hearsay as defined by the evidence code. The rules of evidence, and more particularly, "the hearsay rule cannot be applied mechanistically to defeat the ends of justice." *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979), quoting *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). *See*

*Dutton v. Brown,* 812 F.2d 593, 599–602 (10th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 116, 98 L.Ed.2d 74; — U.S. —, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987).

However, the evidence sought to be admitted must be reliable. Unlike the situations presented in *Lockett, Eddings,* and *Skipper,* wherein the defendant sought to introduce live testimony, here, appellant sought to introduce a letter. The letter had no "indicia of reliability" such as would be contained in an affidavit. Fisher was not present at the sentencing hearing and was not called to testify. Without her presence, there was no way to verify the contents of the letter, or that she was the person who wrote the letter.

Accordingly, while we agree the letter contained information favorable to appellant regarding his character, we do not believe it was sufficiently reliable to allow introduction at the sentencing hearing without the testimony of Fisher. The judge was correct in refusing to admit the letter into evidence.

■ Appellant also asserts the trial judge should have considered the preliminary hearing transcript. Early in the proceedings, appellant's counsel asked that the preliminary hearing transcript be considered by the judge. The judge stated that its introduction was premature, but that he saw no reason that it could not be considered at a later time. (Tr. 33) Later in the proceedings, the judge stated he would consider the testimony of appellant, but made no mention of considering other testimony presented at preliminary hearing. Several witnesses who testified at the preliminary hearing for the State were not called to testify at the sentencing hearing.

A thorough review of the preliminary hearing transcript discloses a great deal of testimony which could be considered "mitigating." At the sentencing hearing, there was direct testimony that, during the robbery of the pharmacy, appellant pointed the gun directly at Beauchamp's head. However, at the preliminary hearing, Beauchamp testified that appellant did not point the gun at his head. This evidence is relevant when determining whether appellant knowingly created a great risk of death to more than one person. There was also testimony at the preliminary hearing regarding appellant's extensive drug abuse. One police officer testified that appellant's arms and legs contained numerous needle tracks. Additionally, there was testimony regarding appellant's cooperation with police officers and his remorseful attitude after the incident.

This evidence was clearly relevant and should have been considered. *See Skipper,* 476 U.S. at 4, 106 S.Ct. at 1671; *Eddings,* 455 U.S. at 113, 102 S.Ct. at 876. In capital cases, the sentencer is required to consider evidence such as this as it possibly "proffers ... a basis for a sentence less than death." *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2965. This Court has previously held that a defendant's attitude toward the killing is an important factor for consideration. *Stafford v. State,* 665 P.2d 1205, 1217 (Okla.Crim.App.1983), *vac'd on other grounds,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359. Similarly, cooperation with law enforcement officials is relevant as is appellant's past history of drug abuse. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 2936, 49 L.Ed.2d 859 (1976); *Eddings,* 455 U.S. at 113, 102 S.Ct. at 887. Unlike the letter, the preliminary hearing transcript bears sufficient indicia of reliability in that the testimony was by witnesses under oath and subject to cross-examination. Accordingly, failure to consider the preliminary hearing transcript was error.

■ Because we have determined that several errors occurred during the sentencing phase of appellant's proceedings, the next question to be addressed is the proper remedy under statutory law. Although 21 O.S.Supp.1985, § 701.13(E)(2) was recently modified to allow this Court to remand a cause for resentencing due to second stage errors, prior to the amendment any error during the second stage required modification of the defendant's sentence to life imprisonment. *See* 21 O.S.1981, § 701.13(E)(2); *Eddings v. State,* 688 P.2d 342, 344 (Okla.Crim.App.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1750, 84 L.Ed.2d 814 (1985). Recently, in *Dutton v.*

*Dixon,* 757 P.2d 376, —— (Okla.Crim.App. 1988), this Court held that "the retroactive application of the 1985 resentencing amendment of Section 701.13(E)(2) ... would constitute a violation of the Federal and Oklahoma Constitutions as an ex post facto application of a law...." The important dates for consideration when dealing with an *ex post facto* problem are the date that the offense was committed and the date the statute became effective. U.S. Const. art. I, § 10; Okla. Const. art. II, § 15. *See also Miller v. Florida,* —— U.S. ——, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987).

Accordingly, because the offense for which appellant was sentenced to death occurred on January 21, 1985, whereas the amendment allowing resentencing was not effective until July 16, 1985, appellant's sentence must be modified to life imprisonment under 21 O.S.1981, § 701.13(E)(2).

For the aforementioned reasons, appellant's petition for writ of certiorari is DENIED, and his death sentence MODIFIED to life imprisonment.

BRETT, P.J., concurs.

BUSSEY, J., concurs in part, dissents in part.