**Jerry BARNES, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. 0–90–0102.**

Court of Criminal Appeals of Oklahoma.

April 20, 1990.

Jerry Barnes, pro se.

## ORDER DENYING APPLICATION FOR WRIT OF MANDAMUS OR INJUNCTION

Jerry Barnes pled guilty to the felony of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, in Oklahoma County District Court, Case No. CRF–88–2157. On August 10, 1988, when Petitioner was sentenced to four (4) years imprisonment, the Oklahoma Prison Overcrowding Emergency Powers Act, 57 O.S. 1984 Supp., § 570 *et seq.* provided that when the prison population exceeded ninety-five percent (95%) of capacity and the governor declared a state of emergency, inmates meeting certain criteria would be granted emergency time credit of one hundred twenty (120) days of credit for every sixty (60) days served, with a possible maximum of seven hundred twenty (720) days per year. 57 O.S.1984 Supp., § 574. Effective July 1, 1989, this section was amended to provide that under the same conditions only sixty (60) days of credit every sixty (60) days will be given with a maximum of three hundred sixty (360) days of emergency time credit per year. 57 O.S.1989 Supp., § 574.

Petitioner argues that at the time he was sentenced, Section 574 which was then in effect became a basis for his plea bargain agreement, and that the application of the 1989 amendment to him is an improper imposition of an *ex post facto* law. Petitioner originally filed this *pro se* action in the Oklahoma Supreme Court. Citing *State of Oklahoma v. Mahler*, 786 P.2d 82 (Okl.1990) by order dated January 29, 1990, the Supreme Court denied jurisdiction finding that issues concerning the determination of the amount of punishment and questions regarding a prisoner's release from confinement are matters within the exclusive jurisdiction of the Oklahoma Court of Criminal Appeals. This Court accepted jurisdiction and addresses Petitioner's claim on the merits.

Article I of the United States Constitution provides that neither Congress nor any State shall pass any *ex post facto* law. *See* Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. Article II of the Oklahoma Constitution provides that "no ... ex post facto law ... shall ever be passed". Art. II, § 15. The United States Supreme Court recently explained in *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) that the understanding of what is meant by *ex post facto* is derived largely from the case of *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798), the first case in which the Court considered the scope of the *ex post facto* prohibition.

In *Calder*, Justice Chase, noting that the expression *"ex post facto"* "had been in use long before the revolution," *id.*, at 391, summarized his understanding of what fell "within the words and the intent of the prohibition":

"1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Id.*, at 390 (emphasis omitted).

*Miller*, 107 S.Ct., at 2450, 96 L.Ed.2d at 359. The Oklahoma Court of Criminal Appeals reached a consistent understanding of the *ex post facto* prohibition when it explained in *Hopkins v. State*, 4 Okl.Cr. 194, 108 P. 420 (1910), *reh. denied* 4 Okl.Cr. 194, 111 P. 947 (1910), the earliest case addressing the meaning of the *ex post facto* prohibition under the state constitution:

Any law is *ex post facto* which is enacted after the offense was committed and which in relation to its consequences al-

ters the situation of the accused to his disadvantage. 4 Okl.Cr. at 196, 111 P. at 949. This Court stated this concept more succinctly in *Conn v. Page*, 462 P.2d 346 (Okl.Cr.1969) wherein we independently stated the third meaning of *ex post facto* expounded in *Calder, Id.* that any law passed after the commission of the offense cannot inflict a greater punishment than the law annexed to the crime at the time it was committed. 462 P.2d at 348. This interpretation has also been used by the United States Supreme Court, for it found that no *ex post facto* violation occurs if a change in the law does "not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah*, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884), cited with approval in *Miller v. Florida*, 107 S.Ct. at 2452–53, 96 L.Ed.2d at 362.

The question before us then is whether 57 O.S.1989 Supp., § 574 increases the punishment Petitioner will receive. In *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) the United States Supreme Court addressed a similar issue. The *Weaver* Court held that a Florida statute which repealed an earlier statute and reduced the amount of "gain time" for good conduct and obedience to prison rules by which an inmate could earn early release was an unconstitutional *ex post facto* law as applied to petitioner who was sentenced prior to enactment of the statute. 450 U.S. at 36, 101 S.Ct. at 968, 67 L.Ed.2d at 28. The court set forth two conditions which must be satisfied in order for a criminal or penal law to be *ex post facto:* "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23. The Court went on to find that the new Florida statute was retrospective because it substantially altered the consequences attached to a crime already completed, and that it disadvantaged the petitioner because it reduced his opportunity to shorten his time in prison simply through good conduct. *Id.*, 101 S.Ct. at 966–67.

Under the reasoning of *Weaver*, 57 O.S. Supp.1989 § 574 is barred as to Petitioner by the *ex post facto* prohibitions of the State and federal constitutions if it both alters the consequences attached to a crime already completed and disadvantages the Petitioner. We agree that the new "cap" law may disadvantage the petitioner, for it reduces by half the "cap" credits which the petitioner may earn in the event that the prison population reaches ninety-five per cent (95%) of capacity, the governor declares a state of emergency and the petitioner meets the criteria of Section 573. The determinative issue is whether Section 574 as amended alters the consequences attached to the crime Petitioner committed. Section 574 is designed to provide the state with an administrative option to alleviate overcrowding in the Oklahoma prison system. Its use is triggered exclusively by the size of the prison population. The size of the prison population cannot be seen to be a consequence attached to the crime Petitioner committed. Rather it is a consequence of the statewide interaction between the convictions and sentences imposed and the prison space available. Section 574 as amended can be imposed only on the basis of events which occur after it was enacted, that is when the prison population reaches ninety-five percent (95%) of capacity. *See* 57 O.S.1989 Supp., § 574. Having found that the effect of Section 574 as amended on the petitioner is not a consequence of the crime he committed, and that the law is only triggered by events which occur after its enactment, we conclude that it is not retrospective. Since it is not retrospective, its application to the petitioner does not violate the *ex post facto* prohibitions of the state and federal constitutions. *See Conn v. Page, Id., Weaver v. Graham, Id.*

IT IS THEREFORE THE ORDER OF THIS COURT that Petitioner's application or writ of mandamus and/or injunction is DENIED.

IT IS SO ORDERED.

(s) <u>JAMES F. LANE</u>
James F. Lane,
Vice Presiding Judge

(s) TOM BRETT
Tom Brett, Judge
(s) GARY L. LUMPKIN
Gary L. Lumpkin, Judge
(s) CHARLES A. JOHNSON
Charles A. Johnson, Judge