Gary Thomas ALLEN, Appellant,

v.

STATE of Oklahoma, Appellee.

No. C–88–37.

Court of Criminal Appeals of Oklahoma.

March 18, 1991.

Rehearing Denied Dec. 19, 1991.

Pete Gelvin, Asst. Public Defender, Oklahoma County Public Defender's Office, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. and Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

On November 10, 1987, Appellant pled guilty to charges of Murder in the First Degree (21 O.S.Supp.1985, § 701.7), Assault with a Dangerous Weapon After Former Conviction of a Felony (21 O.S.1981, § 645) and Possession of a Firearm After Former Conviction of a Felony (21 O.S.1981, § 1283.) He entered his pleas before the Honorable William R. Saied in Oklahoma County District Court Cases CRF–86–6295 and CRF–86–6469. After the acceptance of the pleas, the court conducted a non-jury trial to determine punishment.

Following the evidence presented by both sides, the trial court sentenced Appellant to serve a term of life for the Assault charge and a term of ten (10) years for the Firearms charge. The trial court assessed the death penalty for the Murder, finding the existence of three aggravating circumstances which outweighed the mitigating evidence offered by Appellant: 1) that the defendant was previously convicted of a felony involving the use or threat of vio-

lence to the person; 2) that the defendant knowingly created a great risk of death to more than one person; and 3) that there existed a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

Appellant filed his request to withdraw his guilty plea to the murder within the statutory time period. Upon the denial of that request, he has appealed to this Court. Although we find that the trial court properly denied Appellant's request to withdraw his guilty plea, we find that Appellant has raised an issue which requires relief from this Court with regard to his death sentence. Accordingly, we need only address the errors which relate to the acceptance of the plea, along with the error which is dispositive of the sentencing stage of the proceedings.

Appellant was charged with First Degree Murder for the killing of his girlfriend, LaWanna Gail Titsworth, outside of an Oklahoma City day care center. After shooting Titsworth four times, Appellant walked away from the center, down a nearby alley. Police officers found him soon after the killing and attempted an arrest, during which Appellant attacked one of the officers. During the attack, Appellant grabbed the officer's gun. While struggling over the gun, Appellant was shot in the head. The gun used to kill Titsworth was found in Appellant's pocket.

We are concerned in this proceeding only with Appellant's plea to the murder charge. Although Appellant has raised issues in the present proceedings concerning his pleas to the crimes of Assault with a Dangerous Weapon After Former Conviction of a Felony and Possession of a Firearm After Former Conviction of a Felony, he did not seek to withdraw these pleas in the trial court. The only reason for withdrawal of the pleas raised at the trial court was the sufficiency of the evidence supporting the death penalty. Accordingly, Appellant has not properly invoked the jurisdiction of this Court with regard to the counts other than the murder charge. *See* Rule 4.1, Rules of the Court of Criminal Appeals.

■ We will deal first with Appellant's claim that the trial court did not sufficiently inquire into Appellant's mental competency at the time the plea was entered. This claim is not borne out by the record. Prior to entering the plea in question, Appellant underwent a full-blown competency evaluation at the request of his counsel. He was admitted to Eastern State Hospital for treatment. After a four month stay at the hospital, during which time he received treatment, Appellant was pronounced competent after a jury trial on the issue. The competency trial occurred on October 19 and 20. The instant plea was entered less than one month later.

At the time the plea was entered, the trial court inquired as to any past or present mental illness, asking both counsel and Appellant. The court was told of Appellant's head injury and recent treatment at Eastern State Hospital. The fact that Appellant had suffered a head injury was explained, as was the fact that Appellant had not taken his medication, described as a mild pain reliever, that day. Additional inquiry by the court failed to draw a response from any party which would indicate that there was any doubt concerning Appellant's present competence. As was the case in *Bromley v. State*, 757 P.2d 382, 384 (Okl.Cr.1988), "[n]othing in the transcript suggests that appellant was incapable of appreciating the nature of his action and the consequences of his guilty plea." Based on the totality of the record before us, we find that the trial court more than adequately explored the issue of Appellant's competence to enter a plea. *Ocampo v. State*, 778 P.2d 920 (Okl.Cr.1989).

■ As his next attack on the entry of his guilty plea, Appellant claims that the court failed to establish that he was aware of the elements of the crime of First Degree Murder and that there was no factual basis to support a finding that Appellant acted with malice aforethought. Appellant argues that the facts of this case would also support a conviction for Manslaughter in the First Degree and that had he known the elements of these charges, his plea would have been different. We disagree.

At the plea hearing, Appellant testified, "I shot and killed Gail Titsworth. I had no justifiable cause." Despite this statement, Appellant now appears to claim that although he did kill Titsworth, he never intended to do so. In support of this argument, Appellant details several circumstances which he claims would have supported a finding that the killing occurred as the result of the "heat of passion" rather than the more serious crime of First Degree Murder. We find that these circumstances do not meet the appropriate criteria for a manslaughter conviction.

■ We have previously held that the "heat of passion must render the mind incapable of forming a design to effect death before the defense of manslaughter is established." *Walker v. State*, 723 P.2d 273, 284 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1987). The elements of the defense include proof of adequate provocation, the existence of a strong passion or an emotion such as anger, rage or resentment, the lack of reasonable opportunity for the cooling of the passion and a causal connection between the provocation, the passion and the homicide.

Appellant's attempt to establish these criteria in the present case fall largely short of the mark. He points out that he had argued with the deceased during the days and weeks prior to the killing and that they were arguing outside the day care center immediately prior to the killing. He claims that he was intoxicated and had been depressed on the day of the shooting. Finally, he claims that his efforts to comfort the victim between the first two shots and the next two, should prove to the court that he had no design to effect the death of his girlfriend.

More than anything else, it is this final argument which compels us to conclude that Appellant was not entitled to consideration for a Manslaughter conviction. Assuming for the sake of argument alone that Appellant initially did not intend to kill Titsworth but was acting irrationally because of the "heat of his passion," the fact that after first shooting Titsworth and then checking to see her condition, Appellant shot her two more times as she sought to get away from him by going into the day care center and then ran away from the scene of his crime, dispels any notion that the murder was committed with anything other than malice aforethought. Such premeditation may be formed instantaneously as the killing is being committed. *Carter v. State*, 698 P.2d 22, 24 (Okl.Cr.1985). Taking Appellant's arguments in the best possible light, the fact that he fired more shots after he apparently realized what he was doing leads us to the unmistakable conclusion that he fully intended the consequences of his acts.

■ While it is true that a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts", *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), we cannot agree that the rule of law has been breached in this case. When the defendant has discussed the plea with an experienced defense attorney, the law will presume that the defendant understood the nature of the charges when the defendant fails to present evidence otherwise. There has been no evidence presented to either this Court or the trial court which would indicate that Appellant did not understand the nature of the charges against him.

In this case, as was the situation in *Bromley:*

> Throughout the proceedings, appellant was represented by counsel. The record is replete with occasions during which appellant was advised by his counsel. Appellant testified that he had fully discussed the nature and consequences of entering a guilty plea with his attorney, and was satisfied with the representation of counsel.... Accordingly, we see no violation of the guidelines set forth by *King* [*v. King*, 553 P.2d 529 (Okla.Crim. App.1976)]. This assignment of error is without merit.

*Bromley*, 757 P.2d at 384. We find this holding determinative in the present case and find that Appellant has not identified any error which resulted in the deprivation

of his rights in any manner. We have considered the entirety of the proceedings and find that the record supports a finding of malice aforethought. *State v. Durant*, 609 P.2d 792 (Okl.Cr.1980).

■ Having considered the errors which Appellant raises in connection with our review of the trial court's denial of Appellant's request to withdraw his guilty plea, we cannot reach the conclusion that the trial court erred. The decision to allow the withdrawal of a plea is within the sound discretion of the trial court and we will not interfere unless we find an abuse of discretion. *Hopkins v. State*, 764 P.2d 215 (Okl. Cr.1988); *Vuletich v. State*, 735 P.2d 568 (Okl.Cr.1987); *Ligon v. State*, 712 P.2d 74 (Okl.Cr.1986); *Darnell v. State*, 623 P.2d 617 (Okl.Cr.1981). Insofar as Petitioner has failed to allege any irregularities which would indicate that his plea was involuntary, we cannot say that the trial court abused its discretion.

■ With the validity of Appellant's plea established, we shift our consideration to the penalty portion of the proceedings. We find that the trial court erred when it refused to consider the possible assessment of a sentence of life without parole. Accordingly we find that the case must be remanded to the trial court for a new trial on sentencing pursuant to 21 O.S.Supp. 1990, § 701.13(E).

■ The issue before us now concerns whether or not the application of a newly enacted, intermediate level of punishment for the offense of First Degree Murder subsequent to the commission of the offense in question would violate the prohibitions against *ex post facto* laws found in both the Constitutions of the United States and the State of Oklahoma. We find that it would not.

■ The purpose of the rules against the passage of *ex post facto* laws, Art. I, § 10 of the United States Constitution and Art. 2, § 15 of the Oklahoma Constitution, was to assure that "federal and state legislatures were restrained from enacting arbitrary or vindictive legislation." *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). In a criminal context, these protections apply only to laws or judicial interpretations which directly affect the punishment of the defendant. *Morris v. Meachum*, 718 P.2d 1354 (Okl. 1986). "[No] *ex post facto* violation occurs if a change does not alter 'substantial personal rights' but merely changes modes of procedure which do not affect matters of substance." *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451, 96 L.Ed.2d at 360. *See also Barnes v. State*, 791 P.2d 101, 103 (Okl.Cr. 1990).

In *Miller*, the Supreme Court examined the *ex post facto* implications of changes in the Florida sentencing procedures which affected the punishment for crimes committed previous to the enactment of the changes. The Court was very specific in its definition of the purpose of the *ex post facto* clause, holding that it only applied in four very specific situations:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.* quoting *Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798). The present case invokes concern under the third identified principle.

In *Miller*, the Court makes it quite clear that no violation occurs unless the change in the law alters "punishment beyond what was prescribed when the crime was consummated." *Id.* This holding accords with previous decisions of this Court. In *Dutton v. Dixon*, 757 P.2d 376, 379 (Okl. Cr.1988), this Court acknowledged that the rule required the finding of two elements; first, that the law was enacted subsequent to the conduct to which it was being applied; and second, " 'it must disadvantage

the offender affected by it.'" *Id.*, quoting *Miller*, 482 U.S. at 431, 107 S.Ct. at 2451, 96 L.Ed.2d at 360.

■ Our analysis in such a case must focus on the potential punishments available for a particular act and not on the actual punishment received for the crime. *Id.* In the present case, the State admits that the change in penalty in question here did not affect the maximum or the minimum punishment to which Appellant could have been subjected. Instead, the State merely argues that the addition of an intermediate level of punishment is a substantive change rather than purely procedural, thus the prohibition applies. We cannot agree with this analysis.

There is no question that in this case consideration of the life without parole sentence is a retroactive application of a punitive statute. However, our analysis may not stop here. In order to affirm the trial court's refusal to consider this punishment, we must also find that imposition of the sentence could have disadvantaged Appellant by subjecting him to a harsher punishment than was available at the time he committed his crimes. While we will not speculate as to the comparative drawbacks between a life in prison without chance of parole and the actual imposition of the death penalty, we believe that any possibility of a sentence which avoids the death penalty cannot be said to be disadvantageous to the offender.

Accordingly, we find that the trial court's refusal to consider the possibility of imposing a sentence of life without parole provision under the provisions of 21 O.S.Supp.1987, § 701.10 was error. This result is even more compelling in the present case, wherein the Petitioner urged the court to consider the sentence and executed a valid waiver of his constitutional right against the application of any ex post facto law. The waiver of this right is just as valid as the waiver of any of the other constitutional protections given up in connection with a plea of guilty.

Our next consideration must be how the error may be rectified. It is true that in cases where the sentence is death, this Court has a wide spectrum of authority in conjunction with its appellate powers. In addition to the general power to "reverse, affirm or modify the judgment appealed from" provided in 22 O.S.1981, § 1066, the legislature enacted specific powers as a part of the capital sentencing procedures which control in death penalty cases. We are charged, in 21 O.S.1981, § 701.13, with determining, inter alia, "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." On the record before us, we must conclude that the trial court's error of law concerning the available sentencing options must be construed as an arbitrary factor, which has a negative impact on the validity of the death sentence.

It has long been recognized that a system of capital punishment must meet strict constitutional requirements to be upheld. The primary goal of any such system must be the allowance of individualized sentencing tempered by a controlled amount of discretion, exercisable by the trier of fact. *See generally, Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In the present case, we are presented by a situation where the sentencer did not fully understand the options available, thus rather than the more usual case involving "unbridled discretion," we have just the opposite. The trial court committed no less an error, however, when it took such a restricted view of its sentencing options that it failed to allow Petitioner the full benefit of all the sentences provided by law.

We considered a similar sentencing problem in *Walker v. State,* 780 P.2d 1181 (Okl.Cr.1989). In that case, we held that when the trial court did not recognize the extent of its legal authority to fashion a proper punishment, it cannot be said that it had properly exercised its discretion. We held that when the trial court has operated under a mistaken impression of law, the case must be remanded for resentencing. We find that to be the appropriate remedy in this case.

This Court has recognized, as has the Supreme Court, that many of the errors in capital cases may be found either to be harmless in light- of the totality of the record on appeal, or that in the case of an invalid aggravating circumstance, reweighing by the appellate court may indicate that the death sentence would still have been given notwithstanding the absence of the invalid aggravator. *See Clemmons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *See also Castro v. State*, 745 P.2d 394 (Okl.Cr.1787), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988), on reh. 749 P.2d 1146 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); *Stouffer v. State*, 738 P.2d 1349 (Okl.Cr. 1987), *on rehearing*, 742 P.2d 562 (Okl.Cr. 1987), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). In the case before us now, however, we cannot say that the error is harmless. Much testimony was presented concerning the ramifications of a life sentence. The trial court indicated that it chose the death sentence specifically for the purpose of keeping Petitioner in prison forever. We cannot predict what effect the third option of life without parole may have had on the sentence pronounced. Likewise, our ability to reweigh is not implicated here. We are not concerned with the finding that one of the aggravating circumstance, and its attendant evidence, should not have been considered by the trial court. We are instead faced with a situation where the court fell short of considering all available options. Reweighing the aggravating and mitigating evidence provides no guidance as to whether the trial court would have opted for a sentence of life without parole had it so considered. Although we find that Appellant's murder conviction is AFFIRMED, we find that our only viable option is to REMAND THE CASE FOR A NEW TRIAL ON SENTENCING, with the court giving proper consideration to all three possible punishments for the crime of First Degree Murder; Life in Prison, Life in Prison without the Possibility of Parole and the Death Penalty.

BRETT and JOHNSON, JJ., concur.

PARKS, J., specially concurs.

LUMPKIN, V.P.J., concurs in result.

PARKS, Judge, specially concurring:

This Court established guidelines for the taking of guilty pleas in *King v. State*, 553 P.2d 529 (Okl.Cr.1976). It continues to be the opinion of this writer that the *King* directives should be followed step by step whenever a plea of guilty or nolo contendere is entered. *Ocampo v. State*, 778 P.2d 920, 925 (Okl.Cr.1989) (Parks, P.J., concurring in part/dissenting in part). If they were, most of the questions concerning reliability of these pleas would be eliminated. Compliance with *King* "best expedites the interests of justice and promotes finality by foreclosing state and federal collateral attacks." *Ocampo*, 778 P.2d at 925. On the basis of *stare decisis*, however, I must yield my view to that of the majority of this Court and apply the standards set forth in *Ocampo*. Having done this, I concur in the instant case.

## DENIAL OF PETITION FOR REHEARING

The State of Oklahoma has requested that this Court grant rehearing in the above captioned case on the basis that the decision to remand the case for resentencing runs afoul of the section of the Oklahoma statutes which prohibits retroactive application of statutes without specific authority from the legislature, 22 O.S.1981, § 3. The death sentence meted out to Allen by the jury was reversed by this Court and remanded to the trial court in order that consideration could be made as to all the appropriate punishments, including the option of life without parole. The State contends that this result is improper in that Section 3 of Title 22 prohibits retroactive application of newly passed or revised statutes.

 We disagree with the State's conclusion and hold that the provisions of Section 3 are applicable only to Title 22. In Section 1 of Title 22, the Legislature provided that "[t]his Chapter shall be known

as the code of criminal procedure." Section 3 provides "[n]o part of *this code* is retroactive unless expressly so declared." Title 21 and its definitions of crimes and their respective punishments is not a part of the code defined in Title 22. It is distinctly different from the code of criminal procedures and is defined as a "penal code" by 21 O.S.1981, § 1. Title 21 contains additional descriptive explanation of the term "this code" that is not found in Title 22. In 21 O.S.1981, § 2, the Legislature provided, "[t]he words 'this code' as used in the 'penal code' shall be construed to mean 'Statutes of this State.' " This additional phraseology is absent from Title 22, lending further certainty to our limiting application of 22 O.S.1981, § 3.

Accordingly, we find that the application of the subsequent revision to 21 O.S.1981, § 701.10, establishing the penalty of life without parole for Murder in the First Degree, is not controlled by Section 3 of Title 22.

PETITION FOR REHEARING IS DENIED.

IT IS SO ORDERED.

LANE, P.J., and BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in results.

LUMPKIN, Vice–Presiding Judge concurring in results:

I concur in the Court's denial of rehearing in this case. The facts in this case are unique and the law is being applied to the facts presented. The Murder, First Degree, conviction and sentence of death were imposed as a result of a plea of guilty by Appellant. Prior to the sentencing the Appellant requested the trial judge to consider a sentence of life without parole and executed a valid waiver of his constitutional right against the application of any ex post facto law. The trial judge subsequently made comments on the record that he did not believe he could consider the sentencing option of life without parole, even with Appellant's waiver. In addition, the trial judge made other comments on the record that indicated life without parole would

have been a viable sentencing option in this case if he had been able to consider it. Our original opinion in this case discusses the unique factors, however, it appears we should have been more succinct in our ruling to preclude the broad inference which has been deduced from it.