Forrest Kinzer WADE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–89–151.

Court of Criminal Appeals of Oklahoma.

Jan. 27, 1992.

1358

Johnie O'Neal, Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., David Walling, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

FORREST KINZER WADE, appellant, was tried by jury for the crime of Murder in the First Degree, Counts I and II, in Case No. CRF–86–2326 in the District Court of Tulsa County. Appellant was represented by counsel. The jury found appellant guilty and sentenced him to death, finding the existence of three aggravating circumstances: that appellant was previously convicted of a felony involving the use or threat of violence to the person, that the appellant knowingly created a great risk of death to more than one person, and finally, that there existed a probability that the appellant would commit criminal acts of violence that would constitute a continuing threat to society. The trial court sentenced appellant accordingly.

Johnny Brewer and Holly Moore Brewer lived with Robert Kassanavoid and Robin Cart at 2610 East Fifth Street in Tulsa, Oklahoma. On July 4, 1986, the foursome along with their friend Virgil and his cousin, the appellant, were drinking at the house and making their plans for the holiday. Hayley Johnson, Holly's sister, also came to the house and joined the party. During that afternoon everyone went swimming and later that evening they went to a fireworks display at Tulsa's Riverpark. After the fireworks, everyone returned to the house on Fifth Street, where the party continued until the early morning hours of the 5th.

Around midnight, Johnny Brewer and Holly Moore Brewer went to bed. At approximately 1:00 a.m., Gary Chapman, a friend of Robert Kassanavoid, arrived at the house and joined the party. Around 3:00 a.m., Gary Chapman and Hayley Johnson left the house to buy some more beer. When they returned, Robert Kassanavoid was asleep on the couch and the appellant was sitting next to him. At that time, Robert Kassanavoid got up and went to bed.

Gary Chapman, Hayley Johnson and appellant remained in the dining room talking until approximately 7:00 a.m. Suddenly, appellant grabbed Hayley Johnson by the arm and pulled her close to him. Appellant told Ms. Johnson that he felt close to her, like she was his sister, and then he attempted to kiss her. Ms. Johnson pulled away from appellant and returned to Gary Chapman telling him that she was very tired. Mr. Chapman offered Hayley a bed at his house, which she accepted because she felt nervous around appellant.

As Hayley was writing a note to Holly explaining where she was, she observed appellant come up behind Gary Chapman and hit him in the head with a hammer.

Mr. Chapman fell instantly to the floor. Appellant then grabbed Hayley by the throat and dragged her into the kitchen. Appellant held a large butcher knife to Hayley's face and told her that he wanted her. Appellant then put the knife on the counter and began hitting Hayley in the face with his fist.

Holly Moore Brewer was awakened by her sister's screams and woke Johnny Brewer. Mr. Brewer ran into the kitchen and grabbed appellant's arm and asked him "to be cool." The appellant then grabbed the butcher knife and stabbed Mr. Brewer in the stomach. Mr. Brewer stated "oh, no", and, according to Hayley, left the kitchen holding his intestines in his hands.

Mr. Brewer staggered in to Robert Kassanavoid's room. Hayley pushed appellant away and entered Robert's room. Mr. Kassanavoid testified that Mr. Brewer was bleeding heavily and his intestines were clearly visible. Mr. Kassanavoid also testified that the appellant ran into his room holding the knife in his hand, looked at him and stated, "don't f*** with me." Appellant then left the house and was apprehended two years later in Virginia.

Officer Sherry Stallings of the Tulsa Police Department was the first officer to arrive at the scene. As Officer Stallings entered the house, she observed Gary Chapman laying on the dining room floor. As she checked for signs of life, she observed a hole in the back of his head. Mr. Chapman was pronounced dead at the scene. Officer Stallings then entered the bathroom where she observed Mr. Brewer, "sitting on the commode with his bowels out in his lap and starting to protrude to the floor." Mr. Brewer was transported to a hospital where he died on July 6, 1986.

## I. ISSUES RELATED TO JURY SELECTION

 In his first assignment of error, the appellant asserts that the prosecutor committed numerous errors during voir dire of the jury. Initially, appellant asserts

that the prosecutor attempted to indicate to the jurors that the death penalty would be justified without any aggravating circumstances. A review of the record reveals that four of the five comments that appellant cites as error were not objected to at trial. Thus, concerning those comments, all but fundamental error has been waived. *Weatherly v. State*, 733 P.2d 1331, 1338 (Okl.Cr.1987). We have reviewed the questions asked by the prosecutor and find them to be within the proper boundaries of jury voir dire. We have also reviewed the prosecutor's question to which an objection was interposed. The question concerned whether a juror would look for particular factors before considering death as a punishment. The trial court sustained defense counsel's objection. After an unsuccessful attempt to rephrase the question, the trial court directed the prosecutor to move on, which she did. We have reviewed the voir dire and find the prosecutor's inquiry very similar to an earlier question asked by defense counsel to prospective Juror Wynn. It is our opinion that the error, if any, was cured by the action of the trial court.

 Appellant next contends that the prosecutor minimized the jury's sense of the importance of its role in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by asking prospective jurors whether they could "recommend" the death penalty. Appellant argues that by using the word "recommend" the prosecutor implied that the decision to kill would not be decided by their verdict. A review of the record reveals that no objection was entered to any of the comments which appellant now cites as error. Again, all but fundamental error is waived. *Weatherly, supra*. After a review of the comments, we find that they do not come close to the type of argument condemned in *Caldwell*. The prosecutor was simply inquiring whether a particular juror could vote for the death penalty if they felt it warranted in a given case. We do not find that a reasonable juror would have felt his or her ultimate responsibility diminished.

Indeed, defense counsel specifically made the point to the jury that they were being asked to decide whether the appellant lived or died. We find no error.

■ Appellant next argues that the prosecutor erred in telling the jury that it could not have any sympathy for him. However, a review of the record reveals that in a poorly worded question, the prosecutor was asking prospective Juror Harris whether she could be an impartial judge of the evidence, despite feeling sorry for the appellant. We find no error. In a related argument, appellant complains that the prosecutor improperly sought sympathy for the victims. Again, this assertion is not supported by the record. During questioning by the trial court, prospective Juror Parker stated that she had a problem with the death penalty, but that she could probably consider such a punishment if something happened to a member of her family. The prosecutor then inquired whether Ms. Parker could consider the death penalty in a case concerning people unrelated to her. We find no error.

Appellant next asserts that the prosecutor committed egregious error in phrasing questions that led a jury to believe the death penalty was automatic. A review of the record reveals that the prosecutor had asked prospective Juror Wynn what her verdict would be if the State proved beyond a reasonable doubt two counts of Murder in the First Degree. Ms. Wynn responded, "[d]eath penalty". The prosecutor then responded by asking whether her verdict would be guilty, to which Ms. Wynn replied in the affirmative. At that point, defense counsel objected to the question, which was sustained as to form by the trial court. It is clear that despite a poorly phrased question, the prosecutor was not inquiring about punishment, but rather, the juror's verdict on guilt. We do not find any inference to the jury by the prosecutor that the death penalty was automatic.

■ Appellant next argues that the prosecutor erred by intentionally violating a pre-trial Motion in Limine restricting any mention of the number or nature of the aggravating circumstances before the second stage of the trial. While appellant has cited no authority in support of this proposition, the record reveals that the prosecutor did not mention the number or nature of the aggravating circumstances, but rather, inquired to certain jurors whether having two victims would affect their choice of one punishment over the other. We find no error.

■ Finally, appellant asserts that the prosecutor erred by making certain comments that implied that the State had no burden of proof in the second stage. A review of the record reveals that of the seven comments appellant cites as error, only one was met with a contemporaneous objection, thereby waiving all but fundamental error. *Weatherly, supra.* A further review of comments reveals that the prosecutor was inquiring of the prospective jurors whether there was a certain punishment they were more inclined to favor or whether they would give each option of punishment equal consideration. We do not find that the prosecutor implied that the State had no burden of proof in the second stage, and likewise, we find no error. In closing with this assignment of error, we must state that many of appellate counsel's contentions are embellishments of the record or not supported by the record. Appellate counsel should not feel burdened into creating something that is simply not there.

■ In his next assignment of error, appellant complains that the trial court committed reversible error in failing to declare a mistrial after prospective Juror Trenary stated that she could not fairly consider life imprisonment as a possible punishment, "because in Oklahoma a life sentence usually doesn't turn out that way." After this statement, the trial court excused Ms. Trenary from the panel and appellant moved for a mistrial which was overruled by the trial court. While we find this com-

ment by prospective Juror Trenary to be unfortunate, we do not feel that the statement deprived appellant of a fair trial. *See Stott v. State*, 538 P.2d 1061, 1063 (Okl.Cr. 1975), and *Chuculate v. State*, 488 P.2d 1322, 1323 (Okl.Cr.1971). Each juror empaneled and sworn to try appellant's case stated that they could be impartial and give appellant a fair trial. We find that the trial court properly overruled appellant's motion for a new trial.

▇ Predictably, appellant next complains that the trial court erred in failing to grant his motion for individual voir dire of potential jurors. Appellant argues that such a procedure would have prevented the other jurors from being exposed to prospective Juror Trenary's comment. This Court has consistently held that there is no right to individual voir dire and that such a matter is addressed to the discretion of the trial court. *See Douma v. State*, 749 P.2d 1163, 1165 (Okl.Cr.1988), and *Glenn v. State*, 749 P.2d 121, 126 (Okl.Cr.1988). Having examined the transcript of the voir dire, we find no abuse of discretion.

## II. ISSUES RELATED TO THE FIRST STAGE

▇ Appellant next contends that the prosecutor erred during first stage closing argument. Initially, appellant complains of the prosecutor's statements that appellant cut Johnny Brewer "[j]ust like he was gutting a fish" and that the State could have shown some pictures of Johnny Brewer if it had wanted to divert the jury's attention. Defense counsel's objections to both comments were sustained and the jury was admonished to not consider them. Based on the overwhelming evidence of appellant's guilt, we cannot say that these comments determined the verdict and find that the court's admonitions cured any error. *Weeks v. State*, 745 P.2d 1194, 1195 (Okl. Cr.1987).

▇ Appellant next complains of a comment he contends invoked sympathy for the victims. The prosecutor stated, "don't make them less victims than they were, ladies and gentlemen, because they were celebrating the Fourth of July." We note that no objection was entered to the comment, thereby waiving all but fundamental error. *Weatherly v. State*, 733 P.2d 1331, 1338 (Okl.Cr.1987). We find no fundamental error. Finally, appellant complains of a comment that he asserts was an impermissible reference on his failure to testify. The prosecutor argued, "there is not one scintilla of evidence to prove to you that the defendant did not prove—did not intend anything else than the ultimate result of his actions." However, a review of the record reveals that the comment was in reference to the appellant's own actions as described by Hayley Johnson. We find no error.

## III. ISSUES RELATED TO FIRST STAGE JURY INSTRUCTIONS

▇ Appellant next asserts that the trial court erred in failing to give his requested first stage jury instructions concerning circumstantial evidence and specific intent. An instruction on circumstantial evidence is only required when the State's evidence consists of entirely circumstantial evidence. *Davis v. State*, 634 P.2d 752, 755 (Okl.Cr. 1981). In the present case, Hayley Johnson testified that she observed appellant sneak up behind Gary Chapman, raise the hammer and hit Mr. Chapman in the head. Ms. Johnson further testified that she witnessed appellant grab the knife off the kitchen counter and stab Johnny Brewer in the stomach. As the State did not rely on circumstantial evidence, defense counsel's requested instructions were properly denied.

▇ The trial court further instructed the jury concerning malice aforethought with an instruction that included the language of Oklahoma Uniform Jury Instructions (OUJI–CR) 427, 428 and 429. We find that this instruction adequately informed the jury on the intent required to convict

appellant of first degree murder and stated the applicable law. *Garcia v. State*, 734 P.2d 820, 823 (Okl.Cr.1987). We find no error.

Finding no error which warrants reversal, the finding of guilt as to two (2) counts of Murder in the First Degree is AFFIRMED.

## IV. ISSUES RELATED TO SECOND STAGE

■ After a review of appellant's assignments of error concerning the second stage, we find one which requires reversal of this case for resentencing, thereby rendering appellant's other assignments of error concerning the second stage moot. Appellant contends that the trial court erred in refusing to grant his requested jury instruction on the possibility of sentencing him to life without the possibility of parole. We agree.

In *Allen v. State*, 821 P.2d 371 (Okl.Cr. 1991), *rehearing denied*, 63 OBJ 24 (Okl. Cr. Jan. 4, 1992), this Court held that an intermediate level of punishment for the offense of First Degree Murder, enacted subsequent to the commission of an offense would not violate the prohibition against *ex post facto* laws found in both the Oklahoma Constitution and the United States Constitution. As we noted in *Allen*, the added possible penalty for First Degree Murder does not effect the maximum or minimum punishment to which a defendant is subjected. Accordingly, we find that the trial court erred when it refused to instruct the jury concerning the possibility of imposing a sentence of life without parole under the provision of 21 O.S.Supp.1987, § 701.10. As in *Allen*, this result is more compelling due to the fact that appellant specifically waived his constitutional right against the application of any *ex post facto* law. This error would not be available if the defendant did not or refused to request the life without parole instruction. Here, the request and waiver were made and *Allen*, therefore, applies.

Finally, we cannot find the error to be harmless. We cannot predict what effect the option of life without parole may have had on the jury's sentencing. Thus, although we have AFFIRMED appellant's murder convictions, we find that this case must be REMANDED to the trial court for RESENTENCING, with the jury given proper consideration to all three possible punishments for the crime of First Degree Murder.

LANE, P.J., and LUMPKIN, V.P.J., concur.

PARKS, J., concurs in part, dissents in part in which BRETT, J., joins.

PARKS, Judge, concurring in part, dissenting in part:

I cannot agree with the majority's statement that the error of the trial court in refusing to instruct the jury concerning the possibility of imposing a sentence of life without parole "would not be available if the defendant did not or refused to request the life without parole instruction." Majority at 1363. First, because such an issue is not before this Court, the above statement is merely dictum. Second, contrary to the majority's assertion, a request and waiver are not prerequisites to finding error in a case such as this.

In *Allen*, this Court found "that the trial court's refusal to consider the possibility of imposing a sentence of life without parole provision ... was error." *Id.* 821 P.2d at 376. We then went on to state that "[t]his result *is even more compelling* in the present case, wherein the Petitioner urged the court to consider the sentence and executed a valid waiver of his constitutional right against the application of any ex post facto law." *Id.* at 376 (emphasis added). We did not state in *Allen* that a request and waiver were necessary to preserve any error, only that such procedure made the result "more compelling." Indeed, no defendant is required to request that the trial court instruct the jury on the available

punishment for a given offense; such is the *duty* of the trial court. In *Allen,* this Court mandated that a life without parole punishment be considered by the sentencer where a First Degree Murder defendant is tried subsequent to the enactment of 21 O.S.Supp.1987, § 701.10. Because this punishment is mandated under such circumstances, no request or waiver is required.

I concur with all other aspects of the majority opinion.

BRETT, J., joins in this opinion.