In the Interest of DG, JG and CW, Minor Children.

WR, Appellant (Respondent),

v.

Marianne LEE, Director for the Natrona County Department of Public Assistance and Social Services, Appellee (Petitioner).

No. C–91–2.

Supreme Court of Wyoming.

Jan. 29, 1992.

H. Steven Brown of Brown, Raymond & Rissler, P.C., Casper, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Senior Asst. Atty. Gen., and Richard E. Dixon, Asst. Atty. Gen., for appellee.

Gloria J. Monroe, Casper, guardian ad litem.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

This jury-trial determined parental termination case presents the issue of proper service of process to obtain jurisdiction over a non-resident mother. Finding no proper service to jurisdictionally sustain entry of the order of termination of the parent-child relationship under the Wyoming statutes, we reverse.

## I. ISSUES

In this case, factually showing insufficiency of parenting defined by a jury verdict but now compelled to decision by the requirement for proper service of process, appellate issues defined by the mother as appellant [1] include:

[I.] The district court improperly denied appellant's motion to dismiss for improper service and its verdict is null and void.

[II.] The Wyoming termination of parental rights statute is unconstitutional as it denies defendants due process and equal protection under the Wyoming constitution.

[III.] The district court erred when it refused appellant's proposed jury instructions.

Appellee Marianne Lee, director of what was formerly the Natrona County Department of Public Assistance and Social Services [2] and is now the Department of Family Services, rephrases the issues:

I. Did constructive service of petition on appellant satisfy the require-

---

1. Appellant's brief does not include a statement of the facts pursuant to the issues presented for appellate review pursuant to W.R.A.P. 5.01(3). *See Jung–Leonczynska v. Steup,* 782 P.2d 578, 581 (Wyo.1989) and *V–1 Oil Co. v. Ranck,* 767 P.2d 612, 613 (Wyo.1989).

2. Hereinafter, both Lee and the Natrona County Department of Public Assistance and Social Services are referred to as either DPASS or agency unless Lee is specifically referred to individually.

ment of W.S. 14–2–313(b) and thus confer personal jurisdiction of appellant upon the trial court?

II. Is the compelling state interest in the welfare of our children sufficient to countervail fundamental parental rights when the two collide?

III. Were the instructions given by the trial court to the jury in this case clear declarations of pertinent law?

Because this appeal is jurisdictionally determined on the basis of insufficient service of process, extensive review of other contended issues is pretermitted.

## II. FACTS

This proceeding, undertaken in the district court of Natrona County, Wyoming by the filing of a petition for termination of parental rights, involved three children: JG, age seven; CW, age six; and DG, age four. The petition was signed, verified and then filed in the district court by the director of Natrona County DPASS. The document, dated and acknowledged January 31, 1990, was filed in the district court March 21, 1990 including a notice of hearing scheduled for May 11, 1990. Neither an order to show cause nor a summons was issued and the petition lacked the name or signature of any attorney to represent DPASS.

Sometime in late March, the petition for termination was mailed to the mother of the three children, WR, who was then alleged to reside in Sheridan, Colorado. The document also included the name of the father for two of the children and alleged his residence in Arizona, with no father stated for the third child. All three children had been under the supervision of DPASS through foster home services in Natrona County since about 1986.[3]

On April 23, 1990, an order was issued appointing counsel (present appellate counsel) to represent the mother as an indigent person.[4] Immediately following appointment, the mother's counsel first responded to the petition for termination with a motion to dismiss filed May 8, 1990, which stated:

COMES NOW the Respondent, [WR], by and through undersigned counsel, and moves this Court for an Order dismissing Petitioner's Petition for the following reasons:

1. The Department of Public Assistance and Social Services must be represented by counsel.

2. The Petitioner, Marianne Lee, is not representing herself and is not authorized to practice law.

3. The Respondent was not properly served with copy of Petition pursuant to Rule 12(b)(5) of the Wyoming Rules of Civil Procedure.

WHEREFORE, Respondent prays that Petitioner's Petition be dismissed and for such other and further relief as this Court deems just and proper.

The record demonstrates that at the time the mother's counsel filed the motion to dismiss, no attorneys had yet entered an appearance to represent the children as guardian ad litem or for representation of DPASS in the litigation.

Sequentially, three days after the motion to dismiss was filed, the mother's counsel filed a general denial answer. Included in her answer was an affirmative attack on the factual lack of negligence or abuse of the children for termination justification and a claim that the proposed guardian ad litem was not the best choice to be appoint-

---

3. The termination of the parental rights for the father of the two children, GG, was not contested in the district court nor is it now presented by this appeal. The service of process utilized for the father was no more valid than was the mailing utilized for the mother; furthermore, the father did not enter an appearance individually or by counsel.

4. The record reveals that on April 20, 1990, the mother signed a financial affidavit as an affida-

vit of indigency. This document, as judged from the postmark on an envelope retained in the file, was mailed by her from Colorado to the district court in Casper, Wyoming. It listed the mother's address as being the same location stated in the petition for termination. The record provides no real doubt about the mother's actual receipt of a copy of the petition following mailing by the Natrona County DPASS office.

ed for variant reasons. Regardless of the mother's assertion, the court appointed the petitioned guardian ad litem to represent the children. Also, the district attorney's office in Natrona County entered an appearance to represent DPASS. The mother requested and received a jury trial. Jury findings of abuse and neglect, jeopardy of health and safety, and unsuccessful efforts to rehabilitate the family resulted in a jury verdict unfavorable to the mother. Consequently, the termination order was entered and is the final order from which appeal is taken. The structure of the appeal does not present any sufficiency of the evidence questions to attack that verdict.

The trial commenced on February 27, 1991. Prior to trial, the district court had not taken any action on the mother's motion to dismiss filed May 8, 1990. However, with the start of the trial, the district attorney's office filed an affidavit in resistance to the motion to dismiss which, unsupported by briefing, stated:

I, * * *, Assistant District Attorney for the Seventh Judicial District and attorney for the Petitioner, Natrona County Department of Public Assistance and Social Services herein, upon my oath depose and state as follows:

1. That a Petition was filed in the captioned matter on March 21, 1990, * * * seeking the termination of the parental rights of [WR] and [GG].

2. That service of a summons cannot be made within the State of Wyoming and that their last known address is as follows: [WR], * * *, Sheridan, Colorado * * *; [GG], * * *, Phoenix, Arizona * * *. That this case is one of those mentioned in Wyoming Rule of Civil Procedure 4(e) as authorized in W.S. § 14–2–313(b).

3. That pursuant to W.S. § 14–2–312, the District Court set the Petition for hearing on May 11, 1990, at 9:00 a.m.

4. That a copy of the Petition was sent to each Respondent at the above-listed address by certified mail, return receipt requested. That [WR] received a copy of the Petition filed herein on April 5, 1990, as indicated by the domestic re-turn receipt attached hereto as Exhibit A. Further, that [GG] [the father] received a copy on April 7, 1990, as indicated by the domestic return receipt attached hereto as Exhibit B.

5. That this Affidavit is submitted pursuant to requirements of Wyoming Rule of Civil Procedure Rule 4(1)(e) and W.S. § 14–2–313.

Attached to the affidavit of the district attorney were the return receipts signed by the mother (undated but postmarked April 5, 1990) and by the father of the two children (similarly signed with a delivery date of April 7, 1990). The status of the father for the third child is undisclosed in the record.

It is the district court's order denying the motion to dismiss for lack of jurisdiction because of improper service of process from which this appeal is substantively now presented:

.THIS MATTER having come before the Court this 11th day of May, 1990, on Respondent, [WR's] Motion to Dismiss, the State of Wyoming being represented by * * *, Assistant District Attorney, the Guardian Ad Litem for the minor children, * * *, being present, the Court having heard the argument of counsel, having reviewed the file and being fully advised in the premises, does hereby find that proper service of the original Petition filed herein was obtained on the Respondent, [WR], and that an Affidavit of Mailing had not been filed herein, the appearance of the Respondent by counsel cured any defect in the service of process and that therefore proper service of process has been obtained over the Respondent, [WR], in this matter. Further, this Court finds that the Petition prepared and signed by Marianne Lee is authorized by W.S. § 14–2–310 and that the Respondent's Motion to Dismiss should be denied;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Respondent's Motion to Dismiss is hereby denied, that proper service has been obtained over the Respondent, [WR], and she should answer or other-

wise plead to the Petition filed herein forthwith.

Since no summons or order to show cause had ever been issued, any compliance with service of process requirements was limited to one certified, return receipt requested mailing of the initial petition by DPASS. The petition provided in its text a stated date for a hearing, but no answer date. No proof of service by filing the return receipt was filed with the district court until the date of trial.

## III. DISCUSSION

We will address the issues of jurisdiction and service of process in sequence: a) sufficiency of the initial service of process to provide jurisdiction; b) contended waiver of improper service by filing the answer after the motion to dismiss was presented; and c) propriety of *pro se* appearance by the director of the Natrona County DPASS in initial filing of the petition and its effect on the district court's acquisition of jurisdiction. We also address the constitutionality of the termination statute and whether the district court committed error in refusing the mother's proposed jury instructions.

## A. Sufficiency of the Initial Service of Process.

DPASS buttresses its argument to affirm the entered judgment by claiming that it already had jurisdiction to terminate by acquisition of temporary custody of the children by court order through prior juvenile proceedings. DPASS also contends that the termination statute provided a much easier notice requirement to establish due process. Stated another way, DPASS argues that since custody of the children was first granted by a 1986 order, continuing jurisdiction then existed leaving only required notice pursuant to the termination statute, W.S. 14–2–313(b), which provides:

Service of the petition on the person required to be served by subsection (a) of this section shall be made as provided by the Wyoming Rules of Civil Procedure. If the person is a nonresident or his residence is unknown, service may be had by constructive service or by publication as provided in the Wyoming Rules of Civil Procedure.

In its brief, DPASS summarizes its reliance on constructive service of process:

The case at bar is a termination of parental rights action, wherein W.S. 14–2–313 renders "constructive service" proper in the case of a non-resident defendant. "Constructive service" and "service ... by publication as provided in the Wyoming Rules of Civil Procedure" are joined by the disjunctive in W.S. 14–2–313. Fundamental rules of statutory construction make it clear that the Legislature regards "constructive service" as a form of service separate and distinct from "service ... by publication as provided in the Wyoming Rules of Civil Procedure." *In the Matter of the Adoption of Voss*, 550 P.2d 481, 485 (Wyo.1976).

### 1. *Continuing Jurisdiction.*

■ To address the first part of DPASS's justification for the quality of service of process, we are asked to understand that *jurisdiction* to terminate parental rights resulted from the 1986 temporary custody orders for the children. No authority is cited and we find none vesting termination jurisdiction in the district court when interim custody has been granted to a public child care agency. Clearly, the statutory Termination of Parental Rights, W.S. 14–2–308 through 14–2–319, exists independently and separately from other Wyoming statutes relating to child protection. *See* W.S. 14–3–104 through 14–3–215 and the Juvenile Courts Code, W.S. 14–6–201 through 14–6–243 (July Repl.1986 & 1991 Supp.).[5]

---

**5.** A petition for the termination of parental rights, W.S. 14–2–308 through 14–2–319, is filed in the district court as a civil action. The Rules of Civil Procedure apply. The Juvenile Courts Code establishes an entirely separate judicial structure which includes in its jurisdiction inter-

im custody proceedings. A more informal character of hearing is authorized and a different burden of proof exists: for termination—strict scrutiny by clear and convincing evidence, *Matter of EB*, 795 P.2d 1212 (Wyo.1990); while the juvenile code, W.S. 14–6–225, requires proof of

While an order terminating the parent-child legal relationship, W.S. 14–2–315, constitutes a status resolution, an interim custody order relates to present care and custody. *In Interest of J.G.*, 742 P.2d 770 (Wyo.1987). A termination of parental rights proceeding constitutes an independent lawsuit, *see Matter of EB*, 795 P.2d 1212 (Wyo.1990) and *Matter of Adoption of JLP*, 774 P.2d 624 (Wyo.1989), and consequently requires proper service of process for the court to achieve jurisdiction. *Duncan v. Duncan*, 776 P.2d 758 (Wyo.1989); *Bryant v. Wybro Federal Credit Union*, 544 P.2d 1010 (Wyo.1976). DPASS seeks to escape W.R.C.P. 4 non-compliance by contending that the prior and continuing custody of the children by DPASS also provided basic jurisdiction in the district court for termination of parental rights. Thus, DPASS argues that under the purview of W.S. 14–2–313, only notice was additionally required.

By this contention, DPASS attempts to distinguish our significant case law defining that W.R.C.P. 4 enunciates the fundamental requisites of process which are indispensable in giving a court jurisdiction. *Bryant*, 544 P.2d 1010. We have also held that each procedural step is jurisdictional and a condition precedent to completion of the service of process on a non-resident defendant. *In re Lonquest's Estate*, 526 P.2d 994 (Wyo.1974). Furthermore, we have stated within this body of case law that any significant omission is fatal. *National Supply Co. v. Chittim*, 387 P.2d 1010 (Wyo.1964).

Consequently, we find that termination of parental rights under W.S. 14–2–308 through 14–2–319 is a completely independent legal proceeding for which jurisdiction over the parents is independently required. Previous court proceedings involving an interim juvenile custody determination would not vest jurisdiction in the district court under the termination statute to take ac-

tion independent of compliance with the criteria for service on a non-resident and application of the specific provisions of W.R.C.P. 4. State agency temporary custody is a completely different litigation proceeding from an action to terminate the parental rights of the mother and father. Proper service of process is required to establish jurisdiction in a district court to enter orders of termination of parental rights. *Duncan*, 776 P.2d 758.

2. *What is Required of Constructive Service?*

The essence of the second component of DPASS's bilateral argument theorizes that technical compliance with W.R.C.P. 4 was not required and, in the alternative, jurisdictional compliance was obtained by mailing the petition to the mother and receipt thereafter of her executed return receipt. By contending that constructive service is different from service by publication, DPASS attempts to displace case law on strict compliance of service of process requirements, e.g., *Duncan*, 776 P.2d 758. It is an interesting argument, but one with which we cannot concur.

■ The argument that termination of parental rights proceedings can be commenced without compliance of the service of process provisions of the Wyoming Rules of Civil Procedure is unpersuasive and certainly not justified by the explicit terms of the statute itself. In part, this conclusion follows from the failure in reason of the corollary contention that differentiates constructive service from service by publication.

■ Within the general law, through the federal rules and under the explicit terms of W.R.C.P. 4, service of process is divided into two categories: personal service and constructive service. Personal service achieves jurisdiction for the forum court over the subject matter and the listed de-

a delinquent act beyond a reasonable doubt and determination of neglect by a preponderance of the evidence.

The discrete and separate status of these two different courts distinguishes the civil action filed in the district court (termination of paren-

tal rights) from the juvenile court (interim custody). Continuing personal jurisdiction over the parents cannot be extracted from any juvenile court proceedings to apply to a district court civil action termination proceeding.

fendants by issuance of a summons by the clerk of court and service by the sheriff or other authorized person, W.R.C.P. 4(c), on the individual or entity to be found within the jurisdiction pursuant to W.R.C.P. 4(d) or other applicable statutes. *See, e.g.*, W.S. 26–3–122, personal service on insurance companies, and W.S. 17–16–1510, non-resident corporations.

■ The second category of service is generally defined to be constructive service. Constructive service differs significantly from personal service made within the jurisdiction and may include service by publication, Black's Law Dictionary 285 (5th ed. 1979), service by registered mail and/or personal service out-of-state.

■ The right to constructive service is conferred either by provisions in W.R.C.P. 4(e), or by statute in which the equivalent right to utilize constructive service to obtain jurisdiction is explicitly established. In termination proceedings, the second sentence of W.S. 14–2–313(b) applies W.R.C.P. 4(e) in extending constructive service to include both service by publication and actual service for out-of-state residents.

■ As in any civil proceeding, the normal and proper procedure for instigating parental rights termination proceedings would follow the Wyoming Rules of Civil Procedure. First, the petition for termination would be filed in the district court. A summons would then be issued for determination by the sheriff or process server of whether the respondent could be found within the jurisdiction. After having determined that the respondent is not within the jurisdiction, a decision is required of counsel for the petitioner to select an alternative process to obtain jurisdiction of the non-resident parent for litigation of the parental rights.

One choice available is service by publication under the purview of W.R.C.P. 4(f). Alternative to that process are two other choices: W.R.C.P. 4(*l*)(1), personal service by a process server out-of-state, being the more common and the safest in validation; or W.R.C.P. 4(*l*)(2), service by registered or certified mail.[6]

■ The approach taken by DPASS in this proceeding complied with none of these acceptable methods of service of process. No summons was issued for personal service to be attempted within the jurisdiction.[7] In this case, DPASS overtly elected not to pursue service under the publication format of W.R.C.P. 4(e) or personal service out-of-state under W.R.C.P. 4(*l*)(1). Unfortunately, in attempting to serve process with a certified mailing pursuant to provisions of the service of process rule, W.R.C.P. 4(*l*)(2), DPASS failed to preliminarily file any requisite affidavit as detailed in W.R.C.P. 4(f). In this case, the only affidavit ever filed was the one which was presented to the district court at trial date which occurred long after the mailing had been made by DPASS.

At least as serious an error was noncompliance with the necessity for clerk mailing and certificate of filing the return receipt. W.R.C.P. 4(*l*)(2) and (m)(2)(iii). The "process" (the petition and summons) was not mailed by the clerk, the return receipt did not come back to the clerk and the clerk furnished no certificate "showing the date of the mailing and the date he received the return receipt[.]" W.R.C.P. 4(m)(2)(iii).

B. Waiver by Appearance After Filing Motion to Dismiss Based on Insufficiency of Service of Process.

Having concluded that W.S. 14–2–313(b) grants petitioner the right to use W.R.C.P.

---

6. In reality, the problems with W.R.C.P. 4(*l*)(2) service are that it frequently results in either an insufficient mailing address or fails due to the sophistication of the addressee who refuses to accept the mailing. A third problem is failure of the postal service to observe the "Restricted Delivery"—deliver to addressee only—element of W.R.C.P. 4(*l*)(2).

7. Issuance of a summons as provided by W.R.C.P. 4(a) is additionally important to demonstrate full compliance with the requirements for service of publication, service by registered mail or personal service out-of-state to show unavailability of the defendant for personal service within the jurisdiction. See, for example, the pitfalls portrayed in *Duncan*, 776 P.2d 758 and *Midway Oil Corp. v. Guess*, 714 P.2d 339 (Wyo.1986).

4 service of process only if the procedural requirements delineated in the rule are accurately followed, we are still left with another argument for justification of jurisdiction to enter the order decreed in this case.

In its order, the district court stated that any inadequacy of the service of process and the contended validity of the motion attacking that process was waived by the action of the mother's counsel in serving an answer after filing the motion to dismiss. Waiver by answer after an attack on process or jurisdiction is not the general rule for pleading under either the Wyoming rules or the federal rules and will not be a created exception for termination cases. The provisions of W.R.C.P. 12(b) are dispositive:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one (1) or more other defenses or objections in a responsive pleading or motion.

*See also State ex rel. Sheehan v. District Court of Fourth Judicial Dist., In and For Johnson County*, 426 P.2d 431 (Wyo. 1967). Wyoming had recognized the non-waiver rule before adoption of the present Wyoming Rules of Civil Procedure. *Vanover v. Vanover*, 77 Wyo. 55, 307 P.2d 117 (1957).

Directly relevant to the question of the relationship between jurisdiction and process is the application of the non-waiver rule described in *United Mine Workers of America, Local 1972 v. Decker Coal Co.*, 774 P.2d 1274 (Wyo.1989), where contempt was held to be an independent proceeding. Waiver by succeeding proceedings was rejected and proper compliance with the processes for service to obtain jurisdiction was dispositively required. The quotation from *Matter of Contempt Order Issued Against Anderson*, 765 P.2d 933, 936 (Wyo.1988) in *United Mine Workers of America, Local 1972*, 774 P.2d at 1283 (emphasis added) remains the controlling concept:

> "It is fundamental, if not axiomatic, that, before a court can render any decision or order having any effect in any case or matter, it must have subject matter jurisdiction. *Jurisdiction is essential to the exercise of judicial power. Unless the court has jurisdiction, it lacks any authority to proceed, and any decision, judgment, or other order is, as a matter of law, utterly void and of no effect for any purpose.* Subject matter jurisdiction, like jurisdiction over the person, is not a subject of judicial discretion."

Failure to follow the necessary procedures denied jurisdiction to the court and waiver did not follow from participation in subsequent proceedings. *United Mine Workers of America, Local 1972*, 774 P.2d at 1283.

The relationship between strict procedural compliance with service of process for custody orders described in *Goss v. Goss*, 780 P.2d 306 (Wyo.1989) is certainly similar to the requirement for proper establishment of jurisdiction in a termination proceeding. In *Goss*, the court addressed an affidavit deficiency after mailing service of process had been ineffective and service by publication attempted:

> We have held that such a deficiency [improper statement of an address in the notice] deprives the district court of jurisdiction over the person to be served and prevents it from entering a valid and binding judgment. The effect of that rule is that a deficiency, like that reflected by the affidavit of counsel for the father in this instance, makes the service of publication invalid and, therefore, any

judgment purportedly grounded upon that service is rendered void.

*Id.* at 312.

The effect on jurisdiction of improper service was also dispositively considered in *Midway Oil Corp. v. Guess,* 714 P.2d 339, 342 (Wyo.1986), and a default judgment was consequently vacated:

> Since the service of process is the basis upon which jurisdiction is obtained, this court and current law have frequently enunciated the rule that strict compliance with the statute is required. *In re Estate of Lonquest,* 526 P.2d 994 (Wyo. 1974); *Pease Brothers v. American Pipe & Supply Co.,* [522 P.2d 996 (Wyo. 1974)]; *Joseph Russell Realty Co. v. Kenneally,* 185 Mont. 496, 605 P.2d 1107 (1980); *Ratcliff v. Werlein,* 485 S.W.2d 932 (Tex.Civ.App.1972); 62 Am.Jur.2d Process § 3, p. 785.

See the like effect in *Bryant,* 544 P.2d 1010. In *Pease Bros., Inc. v. American Pipe & Supply Co.,* 522 P.2d 996 (Wyo. 1974), we held that proper service of process was not achieved by the independent receipt of a copy of the suit papers; since process properly served is fundamental, that alternative receipt did not "validate the service." *Id.* at 1003.

■ This case started with insufficient service of process; consequently, jurisdiction was lacking and the termination order is void. "Numerous cases indicate that statutes prescribing the manner of service of summons are mandatory and must be strictly pursued." *In re Lonquest's Estate,* 526 P.2d at 998. *See Vanover,* 77 Wyo. 55, 307 P.2d 117. Improper service of process that is appropriately attacked by a defensive motion to dismiss under W.R.C.P. 12(b) is not waived by a subsequent answer filed pursuant to W.R.C.P. 8. *United Mine Workers of America, Local 1972,* 774 P.2d 1274.

C. Appearance of the DPASS Director Pro Se in the Termination Proceedings.

■ With reversal and anticipated retrial, consideration is required for further issues presented to avoid future problems about the propriety (and wisdom) of the DPASS director in filing the petition in the district court without the assistance and signature of legal counsel. Justification was found by the district court in the phraseology of W.S. 14–2–310, which states:

> (a) The petition for the termination of the parent-child relationship shall be filed with the court by:
>
> (i) Either parent, when termination of the parent-child legal relationship is sought with respect to the other parent; or
>
> (ii) The guardian or the legal custodian of the child; or
>
> (iii) An authorized agency.

We apply a reasonable and realistic interpretation to the statute and ascribe a meaning that "filed" as used in the statute is synonymous with signed or executed. We do not extend the statute to establish the right of the agency, guardian or parent to practice law in representation of the interests of the children. This conclusion foreclosing the right of the agency or its director to appear without counsel is supported by reading W.S. 14–2–312, which requires appointment of a guardian ad litem and the right to a jury trial, and W.S. 14–2–318(a) and (d), which require:

> (a) The court may appoint counsel for any party who is indigent. Indigency shall be established by written affidavit signed and sworn to by the party or sworn testimony made a part of the record of the proceedings. The affidavit or sworn testimony shall state that the party is without sufficient money, property, assets or credit to employ counsel in his own behalf. The court may require further verification of financial condition as it deems necessary.
>
> \* \* \* \* \* \*
>
> (d) Where petitioner is an authorized agency as defined by W.S. 14–2–308(a)(ii)(A):
>
> (i) The district attorney for the county in which the petition is filed *shall represent* the authorized agency in all proceedings under this act;

(ii) The authorized agency shall pay the reasonable attorney's fees and expenses for an indigent party incurred in the defense of an action brought under this act and approved by the court; and

(iii) The authorized agency shall pay the guardian ad litem reasonable fees and expenses approved by the court.[8]

*Id.* (Emphasis added.)

## IV. CONSTITUTIONALITY OF THE TERMINATION STATUTE

■ For the essence of this argument, the mother challenges introduction of DPASS's social studies by disregard of her hearsay objection based upon the phraseology of W.S. 14–2–314.[9] This evidentiary argument results from the introduction of agency developed hearsay documents for termination and their concurrent unavailability to protect parental rights as issues claimed in brief to contravene both due process, Wyo. Const. art. 1, § 6, and non-uniformity, Wyo. Const. art. 1, § 34 and art. 3, § 27. We decline the challenge of a broad-based hearsay review in this case. Overtly within the context of this litigation where DPASS is a party, the social studies here presented are not the type of independent third-party studies contemplated within the quoted statutory language.

We find for present resolution nothing in this case or from that statute which changes the usual hearsay rules established in W.R.E. 801 through 806. The social study when independently made and where the agency was not the petitioner is not solely inadmissible because of its na-

ture of compilation and its character as hearsay under the statute. Where, however, the agency is a party, the rule is different and the statute does not apply the answer. W.R.E. 801 through 806, with accommodative court discretion, should provide the answers for admission or rejection. *In Interest of J.L.G.*, 762 P.2d 42 (Wyo. 1988); *Matter of Parental Rights of SCN*, 659 P.2d 568 (Wyo.1983). However, see *Matter of Parental Rights of PP*, 648 P.2d 512 (Wyo.1982). Similar principles would equally apply whether tender is made by either the petitioner or the parent. In the interest of fairness, see *Williams v. Collins Communications, Inc.*, 720 P.2d 880 (Wyo.1986).

## V. JURY INSTRUCTIONS

The mother contends that the jury instructions used during the trial failed to inform the jury about their power not to terminate and consequent agency requirement to continue rehabilitative efforts. DPASS labels this discussion of the mother to be most perfunctory. We concur since none of the tendered and refused instructions one through five offered by the mother would have provided this direction to the jury. The mother did not object to any instruction that was given as insufficient or incomplete, and we do not find that the refused instructions accurately addressed omitted subjects so that their inclusion was required to provide a proper basis for decision by the jury. Judging from the verdict, the jury not only understood the instructions, but also consistently evaluated the

---

**8.** In addition to the realistic problems created by the agency non-counsel filing and attempted service of process, constitutional questions under Wyo. Const. art. 2 could be created regarding the legislative power to grant rights to laypersons to practice law. There is also the more dangerous concern raised in current-day exposure to W.R.C.P. 11 assessments for practice of law. *See also* W.S. 1–14–128 (1991 Supp.), which is the statutory adaptation of the W.R.C.P. 11 concept. In addressing the subject of authority to practice law, we do not reach constitutional concerns since the statutory interpretation which we make is dispositive. *K N Energy, Inc. v. City of Casper*, 755 P.2d 207 (Wyo.1988).

**9.** W.S. 14–2–314 states:

Upon the filing of a petition by anyone other than an authorized agency as defined by W.S. 14–2–308(a)(ii)(A), the court shall direct that a social study be made by the appropriate county office of public assistance and social services or by any authorized agency to aid the court in making a final disposition of the petition. The social study shall state the factual information pertaining to the allegations in the petition, the social history and the present situation and environment of the child and parent. The social study shall not be excluded as evidence by reason of hearsay alone. The social study shall be made available to any party to the action upon request.

very persuasive and pervasive evidence which had been developed.

Lacking cogent argument about the use of hypothetical instructions that might be used on retrial, we will not pursue this subject further. Upon retrial, the district court will undoubtedly tailor instructions to fit the evidence then introduced.

The order of termination is reversed.