**Maximo Lee SALAZAR, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. F-88-569.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1993.

## ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE

Maximo Lee Salazar, appellant, was tried by jury and convicted of the crimes of First Degree Murder (21 O.S.Supp.1982, § 701.-7(A)) and First Degree Burglary (21 O.S. 1981, § 1431) in Comanche County District Court Case No. CRF–87–460. The jury set punishment on the burglary conviction at ten (10) years imprisonment. Following a second stage proceeding, the jury recommended appellant be put to death for the murder conviction. The trial court sentenced accordingly and appellant appealed to this Court. By published opinion handed down on April 29, 1993, this Court affirmed Salazar's Judgment and Sentence for First Degree Burglary. Salazar's conviction for First Degree Murder was also affirmed, but his sentence of death was vacated and the cause remanded for resentencing. 852 P.2d 729.

■ Pursuant to Rule 3.14, *Rules of the Court of Criminal Appeals*, 22 O.S.Supp. 1993, Ch. 18, App., the State has filed a Petition for Rehearing. According to Rule 3.14, a Petition for Rehearing shall not be filed as a matter of course, but only if at least one of the following criteria is met:

(1) [S]ome question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) [T]he decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

In its Petition for Rehearing, the State raises four grounds for rehearing: (1) the decision is in conflict with *Pollard v. State*, 521 P.2d 400 (Okl.Cr.1974), a case not cited by the State in its brief; (2) the life without parole provision should not be applied retroactively; (3) proposed House Bill No. 1366 indicates a legislative intent that the life without parole provision applies only to persons who committed their crimes after November 1, 1987; and (4) the life without parole provision could be waived if not specifically requested. As to the State's first ground for rehearing, a review of *Pollard v. State*, 521 P.2d 400 (Okl.Cr.1974), shows that case is distinguishable from Salazar's case and does not change the Court's decision. As to the second and fourth grounds, those issues were addressed in this Court's opinion and are not grounds for rehearing. As to the third ground, the final version of House Bill No. 1366 deleted the section on the life without parole provision, and thus does not apply to this case.

■ On June 10, 1993, the State filed a motion to supplement its Petition for Rehearing asserting that the newly enacted Senate Bill No. 451 (enacted June 7, 1993), which contains language amending 22 O.S. 1991, § 701.10a, warrants a rehearing of the Salazar case. This contention is without merit. Section 701.10a(1)(a) was amended so that when a capital case is remanded for resentencing the judge or the jury is authorized to impose "any sentence authorized by law at the time of the commission of the crime ..." To apply this statute to Salazar would deprive him of a sentencing option that this Court has stated was available to him in *Wade v. State*, 825 P.2d 1357 (Okl.Cr.1992), and *Allen v. State*, 821 P.2d 371, 376 (Okl.Cr.1991), and would result in harsher penalty options, which would violate the prohibition against

imposing a harsher punishment in an ex post facto manner. *See Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); *J.M.R. v. Moore,* 610 P.2d 811 (Okl.Cr. 1980). Thus, the State's argument that its Petition for Rehearing should be granted based on this newly enacted statute is without merit.

IT IS THEREFORE THE ORDER OF THE COURT that the Petition for Rehearing filed herein be DENIED. The Clerk of this Court is directed to issue the mandate forthwith.

IT IS SO ORDERED.

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge

/s/ James F. Lane
JAMES F. LANE, Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge

LUMPKIN, P.J., dissents.

LUMPKIN, Presiding Judge: dissenting.

I continue to disagree with the course the Court has taken in this case. By once again using some sort of ephemeral and highly questionable "death is different" label as an excuse to invent a new set of rules governing punishments, the Court overlooks still more authority holding the punishment in effect at the time the crime is committed is the punishment a convicted defendant shall receive. By the use of some sort of "ex post facto" label, the Court apparently holds cases handed down after Appellant's trial would result in a harsher punishment if overruled now.

### I.

The Court summarily dismisses *Pollard v. State,* 521 P.2d 400 (Okl.Cr.1974) as being "distinguishable" from Appellant's case and does not change the Court's decision. What that means is this Court chooses to ignore yet more authority holding that the appropriate punishment is that in effect at the time the crime is committed. *Id.* at

401–02 (Defendant convicted of possession of marijuana when crime was a felony not entitled to relief in subsequent felony proceeding when marijuana felony used as enhancer; applicable punishment was that in effect at the time the crime was committed).

*Pollard,* like other Oklahoma caselaw to the same effect, is not changed by some spurious judicial trump card in a capital case. The majority's reliance on *Caldwell v. Mississippi,* 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) for its death is different analysis was misplaced before, and still is. *Caldwell* dealt with comments by the prosecutor telling the jury the responsibility for the death sentence rested somewhere other than with them. The Supreme Court noted because of the finality of the sentence, "the sentencing process should facilitate the responsible and reliable exercise of sentencing discretion." *Id.* at 329, 105 S.Ct. at 2639. The body of the case and a footnote make it clear the Court's focus was *not* on the *punishment options* available to the sentencer, but on how the sentencer's discretion may have been influenced by improper comments by the prosecutor. *See Id.* at 329 n. 2, 105 S.Ct. at 2640 n. 2 ("[T]his Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of *whim, passion, prejudice, or mistake"* [citation] "[I]n capital cases we must see to it that the jury has rendered its decision with meticulous care" (emphasis added)).

*Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), although dealing primarily with an ex post facto question, also lends support to the idea the proper punishment is the one in effect at the time the crime was committed. There, a defendant committed a murder punishable by death under a statute later declared to be unconstitutional. He was caught and tried under a new procedure, also allowing for the imposition of the death penalty. The Supreme Court upheld the conviction,

noting in pertinent part (for purposes of this analysis) the existence of the old statute served as an "operative fact to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder" *Id.*, 432 U.S. at 298, 97 S.Ct. at 2300. I do not believe it would be stretching the point to claim the Court based its assumption on the principle that the appropriate punishment was the one in effect at the time the crime was committed. This further detracts from the credibility of the Court's "death is different" analysis.

In short, I see nothing holding that, simply because the punishment range is undeniably greater, standard rules of statutory construction do not apply. Therefore, I must dissent to the Court's summarily dismissing established caselaw as being "distinguishable" because of some spurious "death is different" judicial trump card.

## II.

Of even more concern is the Court's use of an "ex post facto" principle to reject the clear intention of the Legislature as being inconsistent with *Wade v. State*, 825 P.2d 1357 (Okl.Cr.1992) and *Allen v. State*, 821 P.2d 371 (Okl.Cr.1991). As I read the Court's order, to use the clear intention of the Legislature and overrule *Wade* and *Allen* "would violate the prohibition against imposing a harsher punishment in an ex post facto manner." Order at 3. However, the Court fails to recognize it has created this "chicken-or-the-egg" scenario by a slight-of-hand process. By departing from established legal principals, the Court now tries to justify that departure through the area of "ex post facto" protection.

First, I must admit my confusion in labeling the provision an "ex post facto" one. This Court in *Cartwright v. State*, 778 P.2d 479, 482 (Okl.Cr.1989), *cert. denied*, 497 U.S. 1015, 110 S.Ct. 3261, 111 L.Ed.2d 771 (1990), quoted *Coleman v. Saffle*, 869 F.2d 1377 (10th Cir.1989) for the proposition a change in the law by judicial construction implicates the Due Process Clause, not any "ex post facto" principle concerning legislative enactments. And although the factors governing the two are the same, incorrect use of the term indicates a confusion that may spill over into other areas of thinking. Death may not be different in this instance; but it is certainly irreversible, and demands clarity of thought and use of terms.

Second, perhaps the Court can explain how repealing *Wade* and *Allen* deprived Appellant of his right to Due Process of the law. The relevant inquiry in this kind of Due Process/"ex post facto" analysis is whether "the change impairs 'substantial personal rights,' or merely changes 'modes of procedure which do not effect matters of substance.' " *Cartwright*, 778 P.2d at 482. *Wade* and *Allen* were decided after Appellant's trial. Appellant did not rely on them in any manner; and I fail to see how their subsequent adoption and deserved repeal would impair his trial proceedings. At most, overruling the cases now would have created a brief window of hope Appellant could receive a lesser punishment. Using the majority's reasoning, the Supreme Court's reversal of a lower court's ruling would be "ex post facto," because an appellant could have relied on reasoning for a brief period of time during appeal, then become disadvantaged because the reasoning was subsequently reversed while his case was pending. Appellant's attorneys should not be allowed to profit from the confusion they themselves helped to create.

Third, the State wishes this Court to examine changes in 21 O.S., § 701.10a, dealing with remanding for sentencing. In the new version, the Legislature clarified what should have been obvious, giving the jury the option of choosing any sentence "authorized by law at the time of the commission of the crime." As this merely restates the basic statutory principles I have discussed above, I am frankly at a loss to understand how this clarification of procedure is a substantive provision. This confusion is intensified when one realizes this Court has declared its ability to independently reweigh aggravating and mitigating circumstances (even though it had previously held it could not do so) was not "ex post facto," but merely a procedural change altering the methods employed in

determining whether the death penalty was to be imposed. *Cartwright; Castro v. State,* 749 P.2d 1146, 1150 (Okl.Cr.1987) (opinion on rehearing), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446; *Stouffer v. State,* 742 P.2d 562, 563–64 (Okl.Cr.1987) (opinion on rehearing), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779.

In summary, *Wade* and *Allen* did not disadvantage Appellant here. Nor would their repeal disadvantage him. *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) and *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1987), both cited in the Court's order, deal with punishment provisions. In *Miller,* the punishment was within a given range at the time the defendant committed the crime, but was at a different range at the time he was sentenced. The trial court sentenced him under the new guidelines. The Supreme Court reversed, noting the appropriate punishment was the one in effect at the time the crime was committed and ruling the new punishment was ex post facto. *Lindsey* dealt with a similar issue. Likewise, *J.M.R. v. Moore,* 610 P.2d 811 (Okl.Cr.1980), dealt with the application of a reverse certification statute to a crime committed before the statute's effective date. This Court held such an application was an ex post facto application. I do not see how these cases support the majority's reasoning.

I must therefore respectfully dissent.